STANLEY KASPAREK ET AL., APPELLANTS, v. GEORGE E. MAY
ET AL., APPELLEES.

119 N. W. 2d 512

Filed February 1, 1963. No. 35279.

McCown & Baumfalk, for appellants.

Denney & Denney and W. O. Baldwin, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is a civil contempt proceeding brought by Stan-

ley Kasparek and Emma Kasparek against George E. May and Rose M. May for the violation of a judgment entered by the district court for Jefferson County on June 8, 1956. This judgment will be hereinafter referred to as the 1956 decree. The trial court found the Mays to be in contempt, but held the contempt was not willful or contumacious. The court further interpreted the judgment, which provided for the removal of a dike to the natural ground level, to mean that the dike should be removed to a ground level of 82 feet. The court also held that a ditch constructed pursuant to the judgment was sufficient and that each party should pay his own costs. Previous to the hearing, the court had sustained a motion to strike all reference to damages and expenses from the accusation. The Kaspareks prosecuted an appeal to this court.

For convenience, Stanley Kasparek and Emma Kasparek, plaintiffs and appellants, who are the joint owners of approximately 158 acres in the north half of the southeast quarter and the south half of the northeast quarter of Section 26, Township 2 North, Range 2 East of the 6th P. M., in Jefferson County, and George E. May and Rose M. May, defendants and appellees, who are the joint owners of the southwest quarter of Section 25, Township 2 North, Range 2 East of the 6th P. M., in Jefferson County, except for 6 acres, will be referred to hereinafter as Kasparek and May respectively. The only connection of the respective spouses with this action, unless otherwise specifically stated, is as joint owners. The east section line of the north half of the southeast quarter of Section 26 is the west section line of the north half of the southwest quarter of Section 25.

The portion of the 1956 decree involved in this proceeding is the following: "IT IS THEREFORE BY THE COURT, CONSIDERED, ORDERED, ADJUDGED AND DECREED that the dike as shown on plaintiffs' Exhibit No. 40 in this said action, constructed by the defendants George E. May and Rose M. May in the year 1949 upon

the Southwest Quarter of Section 25, Township 2 North, Range 2 East, Jefferson County, Nebraska, lies in its entirety in and obstructs the natural flood channel of the Little Blue River, and said defendants, and each of them, be and they hereby are permanently enjoined from maintaining said dike and that within five (5) months from this date the said defendants shall cause said dike to be removed from their land, in its entirety, or, in the alternative and within the said time said defendants shall cause to be removed all of said dike from a point in said dike opposite the point where the watercourses from the south merge and join together near said dike, as shown on plaintiffs' Exhibit No. 40, on to the north and east of said point, the latter alternative to be available to the defendants only on the condition that the defendants shall, within the said time, construct, and thereafter maintain (CBE) on their own land a ditch or drain from the point of merger of the watercourses above referred to on to the Little Blue River sufficient to carry the water from the flow of said watercourses into said river.

"IT IS FURTHER BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that when said dike is removed pursuant to this decree the land shall be restored as nearly as possible to its natural elevation and contour as it was before the construction of said dike with the exception of the area of the ditch or drain to be constructed in the event that the defendants elect to remove only a part of said dike as provided in the alternative set forth; that in the event the defendants elect to remove only a part of said dike as provided in the alternative set forth, and to construct the ditch or drain then required to be constructed, the waste dirt, if any, resulting from the construction of said ditch or drain shall not be piled so as to raise a mound or ridge more than two (2) feet above the natural level of the ground immediately adjacent to said mound or ridge."

May accepted the alternative provided in the 1956 decree, and employed consulting engineers to stake out the land to comply with the court's order. He then employed a contractor who did the work suggested by the consulting engineers within the 5-month limitation. This construction work was done with a bulldozer with a 10-inch blade. The contractor started the removal of the dike at the point immediately east of the southeast corner of the Kasparek land. The dike was lowered by pushing the dirt to either side of the blade.

In October 1956, a survey, made at the request of May, disclosed that a fence which supposedly separated the north half of the southeast quarter, owned by Kasparek, and the north half of the southwest quarter, owned by May, was approximately 55 feet east of the section line at the southeast corner of the Kasparek property, and curved to the northeast so that it varied in distance east of the section line from 55 feet at the southeast corner to 310 feet at the river bank due east of the northeast corner. These distances are indicated on exhibit 107, an exhibit prepared by Kasparek's surveyor. The drainage ditch provided for in the alternative was constructed through a portion of this area.

Kasparek claims the ownership of the land in the north half of the southwest quarter of Section 25 west of the fence line as it existed at the time of the 1956 decree by adverse possession. We make no determination on this point. If Kasparek has such claim, it is by virtue of acts which ripened after the filing of the original action. There is no question the drainage ditch was constructed in the southwest quarter of Section 25, Township 2 North, Range 2 East of the 6th P. M., in Jefferson County, Nebraska, and that May is the record title owner thereof. The question as to whether or not Kasparek has acquired any portion of this property by adverse possession is not properly triable in a civil contempt action. We are concerned herein only with compliance with the 1956 decree on the issues as they ex-

isted in the action which resulted in the 1956 decree. The ownership of this land was not and could not have been an issue involved in the 1956 decree.

The following general principles of law governing contempt proceedings are applicable herein: "Where a party to an action fails to obey an order of the court, made for the benefit of the opposing party, the rule is well recognized that such act is, ordinarily, a civil contempt." McFarland v. State, 165 Neb. 487, 86 N. W. 2d 182.

"Contempts instituted to preserve and enforce the rights of private parties to a suit and compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them entitled, are civil contempts which may be prosecuted in the original action by the affidavit of any party therein who is injuriously affected." Leeman v. Vocelka, 149 Neb. 702, 32 N. W. 2d 274.

"A civil contempt has for its purpose the preservation and enforcement of the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce private rights to which the court has found them to be entitled. Such a contempt is remedial and coercive in its nature, and affects the parties whose private rights and remedies are involved." McFarland v. State, *supra*.

"Proceedings in contempt are governed by the rules applicable to prosecutions by indictment, are in their nature criminal, and no intendments will be indulged in to sustain a conviction. It is necessary to establish guilt beyond a reasonable doubt." Whipple v. Nelson, 138 Neb. 514, 293 N. W. 382.

Has May complied with the alternative provided in the 1956 decree? This alternative required the removal of the dike from a point opposite the place where the two watercourses from the south merged. In this proceeding, May testified that this point is at the southeast corner of the Kasparek land. It was at the southeast

corner that the removal of the dike was started. Kasparek testified the point of merger is 150 to 200 feet south of the southeast corner. We call attention to the fact that the 1956 decree specifically provided that the point of merger to be considered was the point as shown on exhibit 40, which is exhibit 1 in this proceeding. It is very evident from a study of exhibit 1 that the point of merger is from 150 to 175 feet south of the southeast corner, and any other determination would require a modification of the 1956 decree. After the adjournment of the term of court at which a judgment has been rendered, the court has no authority or power to modify the judgment except for the reasons stated and within the time limited in section 25-2001, R. R. S. 1943. Rose v. Vonderfecht, 167 Neb. 276, 92 N. W. 2d 691. The surveyor who made the measurements for exhibit 1 testified that the point of merger was approximately 150 feet south of the southeast corner of the Kasparek property, and we accept this figure. It is undisputed that no attempt of any nature was made to remove this 150 feet of the dike directly south of the southeast corner of the Kasparek land.

Another point of contention herein is that the portion of the dike actually removed has not been removed in accordance with the provisions of the 1956 decree. The 1956 decree specifically provided that when the dike was removed, the land should be restored as nearly as possible to its elevation and contour as it existed before the construction of the dike. There is no evidence in this record as to the exact elevation of the land on which the dike was erected, and we do not have the evidence in the original proceeding. The evidence we do have, other than the testimony of the parties, which is very unsatisfactory, is that which may be deduced from the exhibits in this record, particularly exhibits 1 and 100. We are satisfied that the dike has not been removed to the natural level of the ground before its construction, as required by the 1956 decree. We will

cover this point more specifically hereinafter. We also observe that the method employed in its removal had the effect of raising the level of the land east and west of the dike. The evidence is conclusive that a dike still exists over the area except for a span of 150 feet which was taken out by a flood in 1957. A reasonable interpretation of the record would place the present height of the dike at from 2 to 4 feet. Kasparek testified that the dike was approximately 4 feet in height but that an additional 8 to 10 inches had been added by the plowing of a "back furrow" through the area.

It may be argued that the 1956 decree permits a 2-foot mound. It does, but not at the site of the dike. The decree requires the dike to be removed in its entirety and the land restored to its natural contour and elevation. The 2-foot mound referred to in the 1956 decree is limited specifically to the waste dirt from the ditch to be piled adjacent thereto. It has no reference whatever to the dirt to be removed from the dike.

Kasparek assigns as error the determination by the trial court that the 1956 decree should be interpreted to provide that the dike should be removed and reduced to a ground level of not over 82 feet, in accordance with the calculations of engineering as described and set forth in exhibit 1. The figures in exhibit 1 were determined with reference to a base point of 100 at the highway bridge over the Little Blue River to the northeast of this property. We are unable to determine how the trial court arrived at a figure of 82 feet. We cannot substantiate it from the record.

Exhibit 100 is a profile on the May land east of the dike from the southernmost point through point "Z" which is the center of the north portion of the dike along the river on the May property. It purports to give the natural ground level on the May property over an area of 1,500 feet. Starting at a point due east of the southeast corner and proceeding north the natural ground level does not exceed 80.5 feet, and gradually

drops to 78 feet. The ground area directly east of the dike marked on exhibit 1 does not exceed 80.3 feet, and the marked area west of the dike does not exceed 80.5 feet.

There are cross sections shown on exhibit 1 to give the height of the dike at those selected points. The surveyor who made the measurements for exhibit 1 testified that these cross sections were taken across the dike from points on both sides of the dike, out far enough to reach the natural ground level. The highest point of the natural ground level shown on the cross section north of the southeast corner of the Kasparek property was 81 feet. This was at a point 50 feet due east of the dike and east of the southeast corner. All of the other cross sections on the May land north of this point ranged down from 78.8 feet to 77.1 feet. We note also that it is undisputed that prior to 1949, when the dike was constructed, the May land would flood before the Kasparek land through a flood channel of approximately 650 feet, starting 100 feet north of the southeast corner. We find that an interpretation of the 1956 decree to provide for a reduction of the dike to a ground level of not over 80.5 feet rather than 82 feet would more nearly reflect what that decree was intended to accomplish.

Kasparek assigns as error the finding of the trial court that the drainage ditch was constructed on May's premises and was sufficient. We determine that the drainage ditch was constructed on the southwest quarter of Section 25, Township 2 North, Range 2 East of the 6th P.M., in Jefferson County, Nebraska, in accordance with the 1956 decree, without any reference to any determination of the question of ownership of the area by virtue of adverse possession, which is not at issue in this case. We determine that the construction of the ditch itself was sufficient for the purpose intended. With specific reference to the 150 feet between the point of merger of the watercourses from the south and the southeast corner of the Kasparek land the evi-

dence is not too definite. The 1956 decree requires that the ditch be constructed from the point of merger of the watercourses, which we have determined to be 150 feet south of the southeast corner of the Kasparek land.

Kasparek also assigns as error the failure of the trial court to find that May has not maintained the ditch after its construction. The evidence is undisputed that there has been no maintenance since 1957, and that at least 500 feet of the ditch north from the southeast corner of the Kasparek land has been permitted to fill with silt. Proper maintenance requires the removal of all silt and debris. The lowering of the dike will require the proper maintenance of the ditch, and May has that obligation. This maintenance is to be without interference from Kasparek, unless and until in a proper action a court should determine the rights of the parties to be otherwise than they are assumed to be for the interpretation of the 1956 decree.

Kasparek assigns as error the findings of the trial court that the contempt of May was not willful and contumacious. In Whipple v. Nelson, 138 Neb. 514, 293 N. W. 382, we said: "It follows that the disobedience of the injunction must be wilful before the breach thereof may be punished as a contempt." It is true that May sought professional advice in providing the ditch required. He also employed a contractor to do the actual work in removing the dike and providing the ditch. The 1956 decree required the performance of specific acts. The 1956 decree was definite, and, while it did not give exact measurements, the obvious intention is readily apparent. May did not relieve himself of responsibility for compliance with the 1956 decree by contracting the work to others. If there was any question as to what the 1956 decree meant, it was possible for May to have secured a judicial interpretation of the decree. When there is a question as to what a court intends by its order, and one acts on his own interpretation, he does so at his peril. As we view the evidence,

May did not remove the dike in accordance with the 1956 decree, nor did he reasonably approximate that result, and no satisfactory explanation is given for the failure to do so.

Kasparek assigns as error the action of the trial court in sustaining a motion to strike all allegations that had to do with damages and expenses from his accusation. The sustaining of the motion as to damages was proper. In some jurisdictions, a fine may be imposed for the indemnification of the person who has been damaged by the failure to perform. We are not in accord with these holdings, and state that indemnity for damages cannot be secured in a contempt proceeding. The 1956 decree assessed all damages involved in the original action. If Kasparek suffered further damages, his remedy is an action at law for the subsequent damage. Civil contempt is available to enforce the decree actually rendered, not to afford a remedy for the recovery of subsequent damage. However, a different rule is involved on the question of costs and expenses. Unless it were so, injured parties might be prevented from obtaining the enforcement of a judgment, because the cost thereof could be prohibitive.

We said in State ex rel. Beck v. Frontier Airlines. Inc., *ante* p. 172, 116 N. W. 2d 281: " '* * * it is the law in this state that the power to punish for contempt is an essential attribute of a court of general jurisdiction.' " It is just as essential to the maintenance of that right that the court be permitted to assess the cost of its procurement. We hold that costs and expenses incurred by an injured party may be recovered in the contempt proceedings from the contemner.

Because the burden was on May to fully conform to the 1956 decree, and it is evident he has not done so, we find the evidence sufficient to justify a finding of willful contempt. We do, however, take into consideration the mitigating circumstances disclosed by the record.

For the reasons given, we reverse the judgment of the trial court in the portions noted above and remand the cause, tax all the costs in this proceeding to the appellees May, including an attorneys' fee of $250 for Kasparek's attorneys, and direct that May purge himself of contempt within 90 days from the filing of the mandate herein by performing the following acts:

1. Reduce and lower all of the dike north and east from a point 150 feet south of the southeast corner of Section 26, Township 2 North, Range 2 East of the 6th P.M., in Jefferson County, Nebraska, to a ground level of not to exceed 80.5 feet, in accordance with calculations of engineering as described and set forth in exhibit 1.

2. Restore the drainage ditch to its condition at the time of its original construction, but extend it back to the point of merger of the two watercourses from the south, which has been determined to be 150 feet south of the southeast corner of Section 26, Township 2 North, Range 2 East of the 6th P.M., in Jefferson County, Nebraska.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., not participating.