191 So.2d 851 (1966)
E.E. MORGAN
v.
UNITED STATES FIDELITY & GUARANTY COMPANY.
No. 44113.
Supreme Court of Mississippi.
November 7, 1966.
*852 Cox, Dunn & Clark, Jackson, for appellant.
Butler, Snow, O'Mara, Stevens & Cannada, Jackson, J.A. Covington, Meridian, for appellee.
GILLESPIE, Presiding Justice:
This is an appeal by E.E. Morgan from a decree of the chancery court adjudging him guilty of contempt for failure to obey a former decree of the court.
The United States Fidelity and Guaranty Company, hereinafter called Guaranty Company, is a surety company authorized to write surety bonds in this and other states. Morgan is a partner in a firm engaged in the general construction business. Morgan and his partner also control certain corporations engaged in the construction business. Morgan and other parties entered into certain construction contracts, all of which required the contractor to furnish performance and payment bonds, and in order to induce Guaranty Company to write the bonds on numerous construction contracts, Morgan executed applications and agreements of indemnity in favor of Guaranty Company. Pursuant to these agreements of indemnity, Guaranty Company bound itself as surety on twelve different construction bonds.
The principal in all the surety bonds defaulted, and various creditors filed suits against Guaranty Company upon the surety bonds for labor and materials furnished in the performance of the contracts. Guaranty Company called upon the principals to defend these suits, but the principals failed to do so. As a result, numerous judgments were rendered against Guaranty Company and various items of expense were incurred in connection therewith, all of which Guaranty Company paid. In addition thereto, other large claims were still pending against the principals and against Guaranty Company. Morgan was either a principal in or indemnitor on all such construction bonds.
After Guaranty Company had been compelled to pay the aforesaid judgments and expenses, it sued Morgan and other individual and corporate defendants for reimbursement, indemnity, exoneration, and specific performance. The amounts already paid out by Guaranty Company amounted to several million dollars, and the outstanding claims amounted to several hundred thousand dollars. In its suit against Morgan and the other defendants, Guaranty Company alleged that Morgan and the other indemnitors were under a duty to perform all obligations for which Guaranty Company was bound, and that Guaranty Company was entitled to exoneration and specific performance, including the right to be secured by all available assets of Morgan and other indemnitors and the right to be placed in funds to meet the pending claims. Personal service of process was had upon Morgan, and he appeared in person and by attorney. The case was tried on its merits, resulting in a final decree on July 23, 1965 for money judgments in various amounts against the several individual and corporate defendants. The decree provided also as follows:
That the bond applications and indemnity agreements signed by R.W. Hyde, Jr., E.E. Morgan, Morgan Investments, Inc., 3100 Corporation, Hyde Construction Company, Inc., H & F Engineering Company, Incorporated, Lacoste, Inc., Talbert & Brown Contractors, Inc., Universal Bridge Company and Slade and McElroy, Inc. are valid and binding obligations upon said defendants; that complainant is entitled to reimbursement, indemnification and exoneration by said defendants pursuant to the terms and provisions of said bond applications and indemnity agreements; and said defendants are obligated to perform specifically each and every obligation assumed by them under the terms of each of the various bond applications and indemnity agreements signed by them in regard to the jobs and bonds described in the Bill of Complaint, as amended; * * *.
*853 The applications and indemnity agreements were not annexed to the decree and were not otherwise identified or described in the decree.
When the original bill was filed, the court issued a preliminary injunction restraining Morgan and two corporations controlled by him from transferring or further encumbering the assets of E.E. Morgan or the corporations he controlled. This injunction was not brought forward in the final decree.
One of the applications and indemnity agreements signed by Morgan to induce Guaranty Company to issue a bond in connection with a contract for construction of a sewer system in Shively, Kentucky contained a provision that Morgan "will furnish to sureties, upon request and at such reasonable intervals of time as sureties may designate, financial statements showing the current financial position of the applicant of whom such request for a statement is made."
On September 3, 1965, Guaranty Company wrote Morgan a letter referring to the aforesaid decree and the provisions of the application in connection with the sewerage construction contract for the City of Shively, Kentucky, demanding and requesting that Morgan furnish Guaranty Company within ten days a financial statement showing his current financial position. In the meantime, Morgan had perfected an appeal without supersedeas from the decree of July 23, 1965. (See ___ So.2d ___, this day decided, affirming that decree.) The letter written by Guaranty Company to Morgan was returned unclaimed, but a copy of it was mailed to the attorneys who represented Morgan in the suit which resulted in the decree of July 23, 1965. Morgan did not furnish a financial statement, and on October 29, 1965, Guaranty Company filed in the chancery court, where the July 23, 1965, decree was rendered, and in the same case, a petition for issuance of a citation for contempt, setting forth substantially the facts as hereinabove stated. Pursuant to this petition the chancery court entered an order directing a citation requiring Morgan to appear on the 10th day of November 1965, to show cause why he should not be adjudged in contempt of court for failing and refusing to obey the decree of July 23, 1965, by reason of his failure and refusal to furnish Guaranty Company a financial statement. The court found also that Morgan had absented himself from the state and could not be found for service of process, and it directed process to be served on the attorneys who represented Morgan in the suit already referred to. The citation was thereupon issued and served upon one of the attorneys. Neither Morgan nor his attorneys appeared in response to the citation, and a decree pro confesso was entered taking as confessed all of the averments of the verified petition for issuance of citation for contempt. On November 12, 1965, a decree was entered in which Morgan was adjudged guilty of contempt for failing to furnish Guaranty Company the financial statement, and the sheriff was commanded to take Morgan into his custody and commit him to jail until he purged himself of the contempt. Upon the entry of this decree, Morgan perfected an appeal with supersedeas to this Court.
Morgan assigns the following errors: (1) This case should be consolidated with appellant's pending appeal from the final decree, which is the basis for the charge of contempt here involved; (2) The decree pro confesso and decree adjudging Morgan in contempt are void for lack of proper service of process on Morgan; (3) The filing of the appeal bond from the decree of July 23, 1965, withdrew jurisdiction of the proceeding from the chancery court and placed it in this Court; (4) The evidence did not justify a finding adjudging Morgan of contempt; and (5) The final decree of July 23, 1965, is insufficient to support a judgment adjudging Morgan guilty of contempt.
*854 The fifth assignment raises the fundamental question of whether the decree of July 23, 1965, is sufficient to support a judgment of contempt of court. We hold that it is not, and the disposition of the fifth assignment of error makes it unnecessary to consider the others.
The decree which Morgan is charged with disobeying did not order him to furnish Guaranty Company a financial statement. It merely adjudged that the numerous bond applications and indemnity agreements were valid and binding obligations of the defendants, and then recited that "said defendants are obligated to perform specifically each and every obligation assumed by them under the terms of each of the various bond applications and indemnity agreements signed by them in regard to the jobs and bonds described in the bill of complaint, as amended." The various indemnity agreements which Morgan signed are not in the record, but are described by appellee as "numerous and lengthy," containing "many detailed provisions." The decree did not set out the applications and indemnity agreements. The decree did not order any particular defendant to do any specific act, nor did it refer to any specific obligation of the defendants. To know what each defendant was obligated to do would require an examination and interpretation of the numerous and lengthy exhibits to the bill of complaint.
A decree "should be complete within itself,  containing no extraneous references, and leaving open no matter or description or designation out of which contention may arise as to the meaning. Nor should a final decree leave open any judicial question to be determined by others, whether those others be the parties or be the officers charged with the execution of the decree * * *." Griffith, Mississippi Chancery Practice § 625, at 676-77 (2d ed. 1950). Decrees ordering the extraordinary writ of injunction should state what the defendant must do or refrain from doing without reference to other documents and without necessity for interpretation of other documents. "The defendant will not be required to obey an obscure writ, nor will he be obligated to resort to the bill to ascertain the details of what was intended by the writ." Id. § 449, at 449. This statement was applied in Illinois Central Railroad Company v. George, 241 Miss. 233, 130 So.2d 260 (1961), and in Lauck v. Gilbert, 252 Miss. 371, 173 So.2d 626 (1965). In both cases the decree for injunctive relief was reversed because of indefiniteness. See also 28 Am.Jur., Injunctions § 293 (1959).
In entering decrees for specific performance, courts frequently require the performance of some specific act or prohibit the doing of some specific act. Thus it is that injunctive relief is one of the methods used in enforcing contracts. "In decreeing specific performance, a court of equity must require the performance of some certain and specific act which ought to be performed by the delinquent party, and it cannot enter a general decree that in future the delinquent party shall perform the acts required of him by his contract." 49 Am. Jur. Specific Performance § 176, at 200 (1943).
The decree did not refer to any requirement that Morgan furnish Guaranty Company a financial statement. There was no adjudication that Guaranty Company had demanded, and Morgan had refused, the financial statement. In any event, Morgan was under no obligation to furnish the statement until demand was made therefor by Guaranty Company. It follows that Morgan did not disobey the court when he refused to furnish the financial statement. He disobeyed the demand of Guaranty Company, his adversary. Morgan may not be held in contempt of court for disobeying a demand of his adversary. The court did not, and could not, delegate to one of the parties the function of determining what another party must do under penalty of contempt. This would violate elementary principles of justice.
*855 In short, the decree of July 23, 1965, is insufficient to support the charge of contempt against Morgan because (1) it is not complete in itself and requires reference to extraneous documents to ascertain what obligations Morgan is required to perform; (2) it is indefinite in that it does not require the performance of any specific act; and (3) it could not be enforced as a decree ordering Morgan to furnish Guaranty Company a financial statement without construing the decree as one delegating to Morgan's adversary the power to determine what Morgan must do under penalty of contempt.
The cases relied on by Guaranty Company in support of its contention that the decree of July 23, 1965 is sufficient to support a decree for contempt are: Kasparek v. May, 174 Neb. 732, 119 N.W.2d 512 (1963); McComb v. Jacksonville Paper Company, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1948); Rosin v. Superior Court of Los Angeles County, 181 Cal. App.2d 486, 5 Cal. Rptr. 421 (1960).
In Kasparek v. May, supra, the judgment or decree specifically enjoined the defendant from maintaining a dike, and required the dike's removal and the restoration of the land to its natural elevation. This decree was in specific terms, and the Nebraska Supreme Court said that it "required the performance of specific acts. The 1956 decree was definite, and, while it did not give exact measurements, the obvious intention is readily apparent." 119 N.W.2d at 518. Kasparek is not in point. The decree was definite and required specific acts to be done.
In McComb v. Jacksonville Paper Company, supra, the Fair Labor Standards Act was involved, and the respondents were specifically enjoined in three particulars with reference to payment of specific amounts of wages per hour, the number of hours an employee could work in a week, and the keeping of records. That case is of no assistance.
In Rosin v. Superior Court of Los Angeles County, supra, an interlocutory divorce decree, in which the court granted each party visitation rights with the children, was involved. The wife left the state and took the children to Florida, and in the contempt proceedings she claimed she did not violate the decree because it did not restrain her from taking the children out of the state. The court rejected her argument because the basic question involved custody of children and visitation rights, and the failure to specifically state that the children could not be taken out of the state did not give the wife the right to frustrate the decree and destroy the visitation rights of the other party.
We have studied carefully all the cases relied upon by Guaranty Company in support of its contention, and we are of the opinion that they are not in point. We know of no authority for the proposition that a decree such as the one involved in this case would support a judgment for contempt.
Appellees contend that Morgan should have appeared in answer to the show cause order and requested a clarification of what he was required to do under the decree, and that in failing to do so he acted at his peril. If the decree had ordered or directed Morgan to do or refrain from doing any particular act or acts, this argument could be sound. The decree was declaratory in terms, and contained no words of command, order, or direction. It used no mandatory or injunctive words. This kind of decree may not be construed as one containing a mandatory injunction to do an affirmative act not mentioned in the decree. There was no duty to respond to the citation for contempt for Morgan only had to look to the decree, and when this was done there was no reference to any requirement that he furnish a financial statement.
Therefore, we are of the opinion that the decree adjudging Morgan in contempt *856 of court should be, and it is, reversed, and judgment is rendered here dismissing the contempt proceeding.
Reversed and rendered.
RODGERS, PATTERSON, INZER and SMITH, JJ., concur.