ERNEST G. BAHM ET AL., APPELLEES, V.
RALPH RAIKES, APPELLANT.

263 N. W. 2d 437

Filed March 1, 1978. No. 41281.

John F. Kerrigan of Kerrigan, Line, Martin & Hanson, for appellant.

Edstrom, Bromm & Lindahl, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

This is a contempt proceeding brought against the defendant for his alleged willful violation of a 1954 court decree. That decree required the defendant to perform certain acts and forbade other acts in relation to the flow of waters upon his land. The defendant appealed from the original decree. We affirmed the decree of the District Court. See Bahm v. Raikes, 160 Neb. 503, 70 N. W. 2d 507 (1955). Our decision there describes the lay of plaintiffs' and defendant's land and the various watercourses involved.

On June 26, 1967, plaintiff Alvina Wischmann filed a motion with the District Court to issue to the defendant a citation to show cause why he should not be punished for contempt. On October 13, 1967, plaintiff Wischmann filed an accusation alleging that after substantially complying with the 1954 decree, the defendant thereafter willfully and contu-

maciously violated the decree. The defendant filed an answer to the accusation and the matter proceeded to trial. Trial was held on a number of days between March 25, 1968, and July 10, 1968.

On March 1, 1974, the District Court entered its judgment, holding the defendant in indirect contempt, in that he knowingly and willfully violated the court's 1954 decree, after substantially complying initially with it, as alleged by the plaintiffs. The defendant was given 3 months to purge himself of the contempt as found.

On March 8, 1974, a motion for a new trial was filed by the defendant. A hearing was held on this motion and the court took it under advisement. On January 5, 1977, the defendant's motion for a new trial was overruled. The defendant appeals. We affirm the judgment of the District Court.

The authority to punish for contempt is a power inherent in all courts of general jurisdiction such as the District Court of this state. State ex rel. Beck v. Frontier Airlines, Inc., 174 Neb. 172, 116 N. W. 2d 281 (1962). "Where a party to an action fails to obey an order of the court, made for the benefit of the opposing party, the rule is well recognized that such act is, ordinarily, a civil contempt." McFarland v. State, 165 Neb. 487, 86 N. W. 2d 182 (1957).

In civil contempt proceedings willfulness is an essential element. Village of Springfield v. Hevelone, 195 Neb. 37, 236 N. W. 2d 811 (1975). The disobedience of an injunction must be willful before the breach thereof may be punished as a contempt. Kasparek v. May, 174 Neb. 732, 119 N. W. 2d 512 (1963). In contempt proceedings, it is necessary to establish guilt beyond a reasonable doubt. Whipple v. Nelson, 138 Neb. 514, 293 N. W. 382 (1940).

Under the 1954 decree, the defendant was required to:

"1. Restore the creeks and flood planes through and across his land in Sections 17 and 18, Township

13, Range 9, Saunders County, Nebraska, as hereinbefore described, to as near their natural condition as is possible, as of the time the defendant took possession of said lands.

"2. Do the above described work in such sequence as will best serve to allow the waters of Mosquito creek, Wahoo creek and Silver creek to flow in their natural flood channels and to allow the waters of Wahoo creek and Silver creek to flow in their natural courses.

"3. Remove the dikes along the east side of Mosquito creek commencing approximately 2400 feet south of Wahoo creek and extending to the junction of Mosquito creek with Wahoo creek.

"4. Remove the dikes along Wahoo creek, except that where the course of Wahoo creek has been straightened by the defendant, the dikes along the east bank of said new channel shall not be lowered to a level below the height of the east bank of the natural course of Wahoo creek as it was before the course was straightened, and except that the defendant need not remove the dikes along the present course of Wahoo creek from the point designated cross-section 3-3 on exhibit 30 to the south line of Section 17, if he makes an opening in the west dike opposite the point where Silver creek formerly flowed into Wahoo creek of the same size as the opening required to be made in the east dike to return the flow of Silver creek into Wahoo creek.

"5. Cut a channel for Silver creek from the north line of Section 18 to the point in Wahoo creek where Silver creek formerly flowed into Wahoo creek, this channel to be of the same depth at the entrance to Wahoo creek as Wahoo creek with a gradual grade upstream to the point where Silver creek enters said Section 18.

"6. Effectively plug the ditch which now allows Silver creek to flow into the railroad borrow pit.

"7. Fill and compact the cutoff ditch extending

from the old course of Silver creek into Ab's lake.

"IT IS FURTHER ORDERED that defendant be, and he hereby is, enjoined from maintaining the dikes along the present courses of Wahoo and Mosquito creeks which were ordered to be removed and from diverting the natural flow of Silver creek and from diverting the flow of flood waters of Wahoo creek, Mosquito Creek and Silver creek from the flood channels west and south of Wahoo creek as it flows through said lands of the defendant."

The District Court found that, after initially substantially complying with the decree, the defendant had thereafter violated the decree as follows: (1) By willfully and gradually raising the land level along the east side of Mosquito Creek on his land so as to now constitute a dike and by maintaining the same in violation of the injunction contained in the decree; (2) by diverting the waters of Wahoo Creek from their natural flood channel to the west and south through his lands by building dikes on the south side of Wahoo Creek and raising the land level north thereof; (3) that the defendant, as required by the decree, made an opening in the west dike erected by him on Wahoo Creek opposite the point where Silver Creek formerly flowed into Wahoo Creek and opposite the point where defendant reconnected Silver Creek to Wahoo Creek as required by the decree. The defendant raised and maintains such opening in the west dike at a height to prevent a normal flow of floodwaters of Silver Creek west onto defendant's lands in the natural flood channel; and (4) by again, and in violation of the decree, diverting the flow of flood waters of Wahoo Creek, Mosquito Creek, and Silver Creek from the flood channels west and south of Wahoo Creek as it flows through the lands of the defendant.

The District Court further found that the plaintiff Wischmann had sustained damage as a result of defendant's violations of the decree.

Witness Ralph Mason testified for the plaintiffs as follows: He inspected the Raikes' land in May or June 1957. Water in Wahoo Creek was about 3½ feet below the floor of the DeFoil Bridge. Water was moving out of Mosquito Creek to the southwest for quite a distance all along the creek and it was flowing southeasterly. The area was again observed by him on May 21, 1960. Water was coming out of Mosquito Creek. He observed fresh dirt along the south bank of Wahoo Creek west of the DeFoil Bridge. The fresh dirt extended about 600 feet and was substantially higher than the ground level where it was piled. The witness also observed fresh dirt on Mosquito Creek south about 200 feet from the junction with Wahoo Creek. On May 26, 1960, Mason observed several washouts leading from Silver Creek to the east toward Ab's Lake.

During May of 1960 the witness made further observations. New dirt along the south bank of Wahoo Creek had been tapered and there were Caterpillar marks on it. New dirt along the south side of Wahoo Creek started a couple hundred feet west of the DeFoil Bridge and extended about 600 feet. The new dirt along the east side of Mosquito Creek extended about 600 to 700 feet south from a point 200 feet from the junction with Mosquito Creek.

Observations were made by Ralph Mason in June of 1960. On June 20, 1960, there was flooding to the west and east of Mosquito Creek; however, the water appeared to have come up from the south. At this time the water in Wahoo Creek was about a foot below the girders on the DeFoil Bridge, the girders being about 2 feet beneath the floor of the bridge. The flood plain to the northeast of Wahoo Creek was inundated. There was a broad stream of water to the north of Raikes' land north of the DeFoil Bridge and a sheet of water going to the east. There was a smaller amount of water in the southwest flood plain.

On June 16, 1964, Ralph Mason again observed flood conditions in the area. Water in Wahoo Creek was even with the girders of the DeFoil Bridge. None of the Raikes' land was under water at the time, and there was no water coming out of the Wahoo or Mosquito Creek banks. The land directly north of Wahoo Creek, the northeast flood plain, was under water. Lots of water was flowing out of the new Silver Creek channel and across to Ab's Lake. Later the same day additional observations were made. There was just a small amount of overflow from the north part of Mosquito Creek and none over the south bank of Wahoo Creek. Practically no land of the southwest flood plain was under water. After a heavy rainfall on the evening of June 16, the same conditions were again observed.

In August 1964, the witness and others made observations. They observed more fresh dirt on the south bank of Wahoo Creek east of the DeFoil Bridge. West of the DeFoil Bridge, bank levels were higher than they had been in June. The witness estimated that the east bank levels on Mosquito Creek were about 3 feet higher than in 1960 when observations were made. The dirt on the south bank of Wahoo Creek, east of the DeFoil Bridge, was about 20 feet across on the top and 3 feet high, and extended for 60 rods.

In June 1967, the witness, Ralph Mason, made further observations. On June 10, 1967, water in Wahoo Creek was up to the girders on the DeFoil Bridge. There was heavy flooding on the north side of Wahoo Creek. There was no flooding whatsoever on the Raikes' land east of Mosquito Creek and south and west of Wahoo Creek. He observed the mouth of the new Silver Creek channel. Water was 2 or 3 inches from the top of the bank on the west. Mr. Raikes' Caterpillar was parked opposite the opening in the bank. On June 21, 1967, observations were again made by the witness. There was a lot of water to

the north of the DeFoil Bridge flowing from west to east. The floodwaters extended quite a wide distance to the north. There was no water south of Wahoo Creek on Raikes' land in Sections 17 and 18.

Bob Mason testified for the plaintiffs. He testified that the dikes on the Raikes' land, ordered removed, were taken down in the winter of 1956 and that he was along on an inspection trip made to the Raikes' land in June 1957. A flood was in progress at the time. Water was coming over the Mosquito Creek dikes. There were floodwaters on the southwest side of Wahoo Creek, quite extensive, and some water east of Mosquito Creek and north of Wahoo Creek. A second flood took place in early July 1957. There was a lot of water on the southwest flood plain. The whole field in the area east of Mosquito Creek and south of Wahoo Creek was full of water. Water was about 4 feet below the floor of the DeFoil Bridge. Bob Mason testified that after the second flood of 1957, he observed new dirt on the north side of Wahoo Creek east of the DeFoil Bridge for several hundred feet.

Bob Mason again observed the area in May 1960. On May 21, 1960, water was 1 foot below the DeFoil Bridge girders. The Raikes' land was not flooded as it had been in 1957. A ledge of new dirt, a distinct step-up about 18 inches high, was observed on the south side of Wahoo Creek west of the bridge. A tapered fill about 3 feet high was noticed on the east bank of Mosquito Creek commencing 200 feet south of the junction with Wahoo Creek and running about 600 to 700 feet south. On May 26, 1960, more observations were made. The fill on the south side of Wahoo Creek had been tapered and a crop planted. The flood plain north of Wahoo Creek was full of water. There was another flood in June 1960. Water in Wahoo Creek was about 3 feet under the floor of DeFoil Bridge. The water did not flood like it did in 1957.

Observations were made in August 1964 by this

witness. He observed a mound of dirt, and a Caterpillar and dragline in the area. The south bank appeared higher than the north bank of Wahoo Creek. There was evidence, such as erosion and washouts, that water had topped the north bank.

There were floods again in 1967. On June 10 and 15, water was up to the bottom of the girders on DeFoil Bridge. North of Wahoo Creek there was a lot of water. There was no water in the southwest flood plain. Again in the latter part of June observations were made. There was water on the northeast flood plain. There was no water south of Wahoo Creek and east of Mosquito Creek, just puddles that wouldn't drain, no floodwater was coming through. Wahoo Creek looked as if it had run out to the north. The witness also observed washouts on the east bank of Silver Creek.

Harvey Jacobs testified for the plaintiffs. He observed the area in 1956 and 1957. The witness used a piling in Wahoo Creek to measure the water levels. In the spring of 1956, Wahoo Creek was running pretty full and a little trickle of water was running over the opening in the Wahoo Creek dike opposite the mouth of Silver Creek. In 1957 the witness observed water coming out of Mosquito Creek.

Jacobs observed the area in 1960. Water was over the piling and no water was coming out of Mosquito Creek. Jacobs was along on an inspection trip on May 26, 1960. He observed dirt along the bank of Wahoo Creek west of the DeFoil Bridge. As he recalled there had been work all the way along the bank. The fill was 2 to 3 feet. Several days thereafter the witness observed a dike along the east side of Mosquito Creek. Water in Mosquito Creek had not topped the new fill. On May 26, 1960, no water was coming out of the opening in the dike opposite where Silver Creek joined Wahoo Creek. Jacobs testified that he observed new dirt in this opening. He also observed washouts from the east bank of Silver Creek.

The witness was on the inspection trip in August of 1964 with the others, and his testimony was the same as other witnesses regarding flood conditions and the observations of dirt along the Wahoo Creek banks.

Donald Wischmann, son of the plaintiff Wischmann, testified. He testified that the Wischmann land is in the flood plain of Stambaugh's Slough, a drainage ditch which comes out of Ab's Lake. Water from Wahoo Creek can reach their land if it flows north and east of Wahoo Creek and gets over to Ab's Lake. In June 1957, when the defendant's dikes were down, there was a flood. There was water on Raikes' land east of Mosquito Creek and south of Wahoo Creek. The Wischmann land did not get flooded, but did get some backup water from Wahoo Creek, which is a normal thing and which comes without appreciable force and does no significant damage. In the 1957 flood there was no flood damage from Stambaugh's Slough.

In May 1960, there was a flood and Wischmann inspected the Raikes' land. Fresh dirt was observed along the banks of Wahoo and Mosquito Creeks. On the south side of Wahoo Creek he saw about 2 feet of dirt which had been worked on and tapered away from the bank. There was no evidence that water had flowed out of Mosquito Creek. In the 1960 flood, Stambaugh's Slough was full and rushing with a rapid flow. It was faster and there was considerably more flow than in 1957. The floods of 1957 and 1960 were about the same general size. There was damage in 1960 such as washouts. There was a flood in June 1960. Water came down Stambaugh's Slough with great volume and velocity. Damage was done, fences washed out, ditches dug, and debris deposited.

In the 1967 flood, water again was in great quantity and rapidly flowing in Stambaugh's Slough. The 1967 flood did damage to the crops. The witness tes-

tified that in 1957 water did not come down Stambaugh's Slough very markedly or rapidly. Ralph Mason testified that he noticed a big difference in the amount of flooding down Stambaugh's Slough since 1960.

Defendant's evidence can be generally summarized as follows: (1) That while the defendant did on occasion place dirt along the banks of Wahoo Creek and Mosquito Creek, such was done to repair washouts and erosion and to restore the banks to their original levels, and not to raise the level of the banks so as to constitute a dike; (2) that the bank levels in question on Wahoo Creek and Mosquito Creek are presently at substantially the same levels they were when he was deemed to be in substantial compliance with the 1954 decree; (3) that at the times in question, his land in the area in question suffered from flood damage; and (4) that the level of the opening in the southwest bank of Wahoo Creek opposite the Silver Creek connection has never been raised by him in violation of the decree.

What we had to say in a recent case of similar nature is applicable here: "Much of the evidence before the District Court was conflicting and contradictory in nature. The trial court had the opportunity to view the parties and the witnesses. This court will consider the fact that the trial court saw and heard the witnesses and observed their demeanor, and will give great weight to the trial court's judgment as to credibility. * * * the trial court personally inspected the area in question. This court will give consideration to the fact that the trial court inspected the premises." Paasch v. Brown, 199 Neb. 683, 260 N. W. 2d 612 (1977). We concur in the finding and conclusions of the District Court.

The judgment of the District Court is correct in all respects and it is affirmed.

AFFIRMED.