IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PITTMAN-BARRETT V. BARRETT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

REBECCA PITTMAN-BARRETT, APPELLEE,

V.

TRENT BARRETT, APPELLANT.

Filed July 7, 2020.    No. A-19-1015.

Appeal from the District Court for Lincoln County: RICHARD A. BIRCH, Judge. Affirmed in part, and in part reversed and remanded.

Mark R. McKeone, P.C., L.L.O., for appellant.

Rebecca Pittman-Barrett, pro se.

RIEDMANN, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

INTRODUCTION

Trent Barrett (Trent) appeals from an order of the district court for Lincoln County which found Trent to be in contempt of portions of the decree which dissolved his marriage to Rebecca Pittman-Barrett (Rebecca). Trent challenges both the district court's finding that he was in "willful" contempt of the decree and the court's imposition of a sanction which Trent believes to be an abuse of the court's discretion. In addition, Trent asserts that the district court erred in awarding Rebecca attorney fees related to the contempt action. For the reasons set forth herein, we affirm the portions of the district court's order which found Trent to be in willful contempt of the dissolution decree and which ordered him to pay Rebecca's attorney fees. However, we find that the court abused its discretion when imposing a sanction against Trent for the contempt. As such, we reverse that portion of the district court's order which ordered, as a sanction against Trent, that

- 1 -

each party retain certain property within their possession. Such sanction improperly modified the parties' decree of dissolution.

## BACKGROUND

Trent and Rebecca were married in December 1998 and divorced pursuant to a decree entered on October 22, 2018. Trial on the divorce action occurred on September 26. At the trial, the parties indicated to the court that they had entered into a property settlement agreement which they wished to have incorporated into the decree of dissolution. The district court accepted the parties' settlement agreement and memorialized it in the decree. Relevant to this appeal, the decree included the following provision:

> All of the tack and tools, including that which has been removed by [Trent], will be returned to the [marital residence] on a date to be agreed to by the parties within the next 30 days and they will then take turns on a piece by piece basis selecting the items. It is expected that each will have a neutral third-party present to observe and keep the peace during this process. Each shall be responsible for any cost for any person they have as an observer. After the selection process is completed, [Trent] shall have 30 days thereafter to remove the items he selected and any item left after 30 days shall become the property of [Rebecca].

A property statement submitted to the district court by Rebecca prior to the dissolution trial indicated that the tack and tools in her possession were valued at $26,246 and the tack and tools in Trent's possession were valued at $12,870.

On May 28, 2019, Rebecca filed a "Verified Application for Contempt Citation Issue," in which she asked the court to order Trent to appear and show cause why he was not in contempt of the decree of dissolution. Among other things, Rebecca alleged in her filing that Trent had failed to comply with the provision of the decree which required Trent to return the tack and tools to the marital property within 30 days so that all of the tack and tools could be divided evenly between the parties. Rebecca indicated, Trent "has willfully refused to cooperate on this matter and therefore, he has not returned the items he removed nor has he been willing to arrange a date for the exchange." Rebecca also asked for Trent to pay her for the attorney fees she has incurred since the entry of the decree as she has "trie[d] to get Trent to follow through on his responsibilities." On June 2, the district court entered an order for contempt citation issue. In the order, the court directed Trent to appear at a hearing on June 17 to show cause why he should not be held in contempt of court.

On June 13, 2019, prior to the show cause hearing, Trent filed a "Verified Motion for Contempt Citation," in which he asked the court to order Rebecca to appear and show cause why she was not in contempt of the decree of dissolution. Trent alleged in his filing that Rebecca had not been cooperative with his efforts to divide their property, despite his repeated attempts to meet with her. Trent indicated that he has twice come to the marital property to begin dividing the tack and tools, but on both occasions, he was asked to leave. Trent also alleged that he has incurred attorney fees due to his efforts to divide the parties' property. On June 17, the district court entered an order for contempt citation. In the order, the court directed Rebecca to appear and show cause why she should not be held in contempt of court.

An evidentiary hearing on both contempt actions was ultimately held on September 3, 2019. At the hearing, both Rebecca and Trent testified. In addition, a sheriff's deputy testified regarding his interactions with Rebecca and Trent when they had tried to divide the tack and tools.

Rebecca testified that Trent resides in Colorado, approximately 3 or 4 hours from their marital residence near North Platte, Nebraska. Rebecca explained that during the pendency of the divorce proceedings, Trent returned to the marital residence on multiple occasions and removed some of the tack and tools they used on their ranch. Rebecca indicated that Trent returned when she was not at home and even returned on one occasion after she had changed the locks on certain buildings on the property. Rebecca indicated that Trent had broken the new locks in order to gain access to the tack and tools on that occasion. Trent never provided her with an inventory for the items he removed; however, Rebecca testified that she was aware of some of the items that Trent had taken.

Rebecca testified that even though the decree required Trent to return the tack and tools he had removed within 30 days of the decree, or by approximately November 22, 2018, he did not do so. Instead, Trent informed Rebecca that he would return to the marital residence on November 26 with the tack and tools so that they could begin dividing the property. On November 26, Trent traveled to North Platte, but he did not bring the tack and tools with him. Trent explained to Rebecca that he could not get his truck started due to the weather, but that he would bring the tack and tools back later in the week when the weather was nicer.

Despite Trent not bringing the tack and tools with him, Rebecca met with Trent in order to handle other issues arising from their property division. However, she told Trent that she did not want him to come to the marital residence because she was not willing to divide the tack and tools in her possession until he returned all of the items he had taken pursuant to the terms of the decree. Trent came to the residence anyway and was asked to leave by Rebecca's stepfather.

Trent did not return to the marital residence with the tack and tools in the days following November 26, 2018, as he had promised Rebecca. During the month of December, Rebecca tried to contact Trent about returning with the tack and tools. In fact, she suggested a specific date in December when the parties could meet at the marital residence to divide the tack and tools, but Trent did not appear on that date. Rebecca stopped contacting Trent in late December because, according to her testimony, Trent had made threats to her. Rebecca testified that she did not have any contact whatsoever with Trent from January to June 2019.

After Rebecca filed the contempt action in May 2019, Trent contacted her about meeting to divide the tack and tools. They agreed to meet on June 11. That day, Trent arrived at the marital residence with the trailer containing the tack and tools; however, Rebecca believed him to have returned "substantially less" than he had taken. When they started to talk about the division of specific items, Trent was unwilling to let Rebecca have anything. Rebecca testified that Trent told her there was nothing in his trailer that she could have. Ultimately, no division of the tack and tools occurred on June 11. Each party retained the tack and tools in their possession.

Rebecca testified that she believed an appropriate resolution of this issue would be to have the court order each party to keep the tack and tools currently in their possession. She believed that the "main problem" with dividing the tack and tools between themselves was that Trent was simply

not willing to cooperate. Rebecca also testified that she had incurred attorney fees in the amount of $5,228 in attempting to execute the terms of the decree of dissolution.

Trent testified that he is currently living in Colorado and has started "rodeoing" again. He also earns income by offering clinics and private lessons. Trent denied removing any of the parties' tack and tools after the dissolution proceedings were initiated. He indicated that he had taken the tack and tools prior to the proceedings and that Rebecca "had an idea" of what he took because, at one point, he let her into his storage unit where a lot of the items were in boxes. Trent also denied ever "forc[ing] entry" into the marital property in order to obtain tack and tools.

Trent acknowledged that pursuant to the decree, he had 30 days to return to the marital residence with the tack and tools so that the parties could divide things. Trent agreed with Rebecca's testimony that he did not come to the marital residence until November 26, 2018, and that when he arrived on that day, he did not bring the tack and tools with him. Trent explained that his truck would not start that morning and that his failure to bring the property was not intentional. When Trent arrived at the marital property so that he and Rebecca could start to discuss how to divide the tack and tools, he was told by Rebecca's stepfather to "get the hell off the place." Trent explained that he did not return later that week or anytime during December because of commitments related to the rodeos he was participating in. However, Trent also testified that between November 2018 and June 2019, he and Rebecca have talked "off and on," including about how to divide the tack and tools.

Trent testified that when he arrived at the marital residence on June 11, 2019, he brought with him all of the tack and tools he had previously removed. He indicated that he and Rebecca were unable to divide things on that day because Rebecca was being unreasonable. He requested that another attempt to divide the property occur sooner rather than later. Trent explained that "sooner" meant sometime in October when his rodeo schedule slowed down some. Trent also requested that at the next meeting, a third party be present "to help guide us through it." Trent indicated that he and Rebecca were too emotionally invested in the property to be able to divide it between themselves effectively. He also indicated that he did not believe it would be "even close to fair" to just let Rebecca keep the tack and tools in her possession. He explained that Rebecca has a lot more items than he does, including some items that are very important to him.

At the evidentiary hearing, Casey Nelms, a deputy with the Lincoln County Sheriff's Office, also testified. At Rebecca's request, Nelms was present at the June 11, 2019, "attempt" to divide the tack and tools. Nelms testified that when Trent arrived at the property, he appeared to already be frustrated and there was "a lot of tension between" Trent and Rebecca. Nelms explained that after 1 hour, the parties had not been able to successfully divide anything. In fact, they had not yet agreed whether to allocate a drill bit set as a complete set or as individual drill bits. As a result of the lack of progress, Nelms decided to terminate the meeting between the parties and told Trent to leave the property.

After the hearing, the district court entered an order finding both Trent and Rebecca to be in contempt of the decree of dissolution. Specifically, the court found, "While [Rebecca] bears no responsibility regarding [Trent's] failure to do things in a timely manner, including delivery of the tack and tools (whatever that may have consisted of) on November 26, 2018, she does bear some

responsibility for the failure of the June 11, 2019 meeting." The court also found, "that to the extent contempt can be quantified, the contempt of [Rebecca] is substantially less than that of [Trent]."

In the order, the court indicated, "It would be little more than an exercise in futility, and there have already been enough of those in this case, to order the parties to attempt to divide unknown property or to involve third-parties in that division." The court further explained:

> In their settlement agreement, the parties agreed to divide the tack and tools, and each agreed that they owned tack and tools that were marital property. The phrase "tack and tools", is at best a general description of property, and none of the tack and tools to be divided were itemized. It is clear that neither knows with any precision what this property was, where it was, or even if it was. It is also clear that they are not in agreement regarding what tack and tools may or may not be marital or premarital property.

Instead of ordering the parties to attempt to divide the property again, the court awarded Trent and Rebecca the tack and tools in their possession:

> [Rebecca] valued the tack and tools in her possession at $26,246, and the tack and tools in [Trent's] possession at $12,870. The Court accepts [Rebecca's] values for the tack and tools. . . . Because of [Trent's] contempt, [Rebecca] is awarded all of the tack and tools in her possession, at her value of $26,246. Because of the contempt of [Rebecca], [Trent] is awarded all of the tack and tools in his possession, at [Rebecca's] value of $12,870. Because the contempt of [Trent] exceeds that of [Rebecca], no adjustment is made to equalize this division which awards [Rebecca] property that exceeds that awarded to [Trent] by $13,376.

The court also ordered Trent to pay $1,000 toward the attorney fees incurred by Rebecca.

Trent appeals from the district court's order.

## ASSIGNMENTS OF ERROR

On appeal, Trent first asserts that the district court erred in finding him to be in willful contempt of the provision in the decree which required him to within 30 days of the decree return the tack and tools in his possession to the marital residence so that such property could be divided equally between he and Rebecca. Second, Trent argues that the court abused its discretion in sanctioning him for the contempt by allowing each party to retain the tack and tools currently in their possession. Finally, Trent asserts that the district court erred in awarding Rebecca attorney fees in conjunction with the contempt action.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *Krejci v. Krejci*, 304 Neb. 302, 934 N.W.2d 179 (2019). A judicial abuse of discretion exists when a judge, within the

effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id*.

A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

ANALYSIS

*District Court's Finding Trent Was in Contempt of Decree.*

Trent first asserts that the district court erred in finding that he willfully failed to comply with the terms of the decree of dissolution such that he was in contempt of the court's order. In support of his argument, Trent asserts that his failure to return the tack and tools to the marital residence was not willful because he and Rebecca were in "regular communication relating to the exchange of the property on an ongoing basis between November 26 2018 and June 11 2019." Brief for appellant at 10. He also asserts that the decree "had no provision making it contemptuous for [his] failure to remove items from [Rebecca's] property." *Id*. Upon our review, we find that the record does not support Trent's assertion that any failure to comply with the provisions of the decree was not willful. As such, we affirm the finding of the district court that Trent was in contempt of the decree of dissolution.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *McCullough v. McCullough, supra*; *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Civil contempt requires willful disobedience as an essential element. *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018). "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id*. If it is impossible to comply with the order of the court, the failure to comply is not willful. *Id*. Willfulness is a factual determination to be reviewed for clear error. *Id*. Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence and without any presumptions. *Id*.

The decree of dissolution, which was based upon the property settlement agreement entered into by the parties, provided specific instructions with regard to the division of the tack and tools. The decree directed Trent to return to the marital residence all of the tack and tools he previously removed "on a date to be agreed to by the parties within the next 30 days." Because the decree was entered on October 22, 2018, the tack and tools were to be returned on or before November 22. The parties agree that Trent did not return the tack and tools by this date. Furthermore, during his testimony, Trent specifically acknowledged his understanding of the 30-day requirement detailed in the decree.

The parties also agree that Trent was to return to the marital residence on November 26, 2018, with the tack and tools and to enter into the division process. Trent returned on November 26 but did not have the tack and tools with him. According to Rebecca, Trent promised to bring the tack and tools to the marital residence in the days following November 26. He failed to do so. In addition, he failed to return the tack and tools anytime in the next 6 months. The parties

presented conflicting evidence regarding their communications during this 6-month period. Rebecca testified that she attempted to contact Trent regarding the tack and tools in December 2018. However, she stopped reaching out to Trent in late December because of threats he had made toward her. According to Rebecca, she had absolutely no contact with Trent from January through May 2019. Trent only contacted her after she filed the contempt action. To the contrary, Trent testified that he and Rebecca had regular contact from November 2018 through June 2019. He testified that during these discussions, they talked about meeting to divide the tack and tools. In any event, when Trent finally returned to the marital residence again in June 2019, the parties were unable to come to an agreement regarding any of the tack and tools.

Based upon our review of the record, we find no clear error in the findings of fact made by the district court and no abuse of discretion in its ultimate determination that Trent was in contempt of the decree of dissolution. The decree provided clear directions to the parties regarding the division of the tack and tools. Trent violated these directions when he did not return the tack and tools to the marital residence within 30 days of the entry of the decree. He also violated the decree when he arrived at the marital residence on November 26, 2018, without the tack and tools and then failed to return to the residence with the tack and tools during the next 6 months. Finally, he violated the decree when he and Rebecca were unable to divide any of the tack and tools when they met with each other on June 11, 2019.

There is evidence to demonstrate that Trent's violations were intentional. At the evidentiary hearing, he acknowledged understanding the requirements of the decree and he also admitted to his failure to return the tack and tools to the marital residence at any time prior to June 11, 2019. Trent relies on his portrayal of the parties' regular communication from November 2018 through June 2019 to demonstrate that his failure to comply with the court's order was not willful. However, it appears from our reading of the district court's order that it found Rebecca's characterization of the parties' communication during this time to be more credible. In particular, we point to the district court's determination that Rebecca bore no responsibility for Trent's failure to deliver the tack and tools in a timely manner. In any event, the parties' communication, or lack thereof, from November 2018 through June 2019 ultimately does not have any effect on the willfulness of Trent's disobedience. Even if the parties had discussed the division of the tack and tools on a regular basis from November 2018 through June 2019, the fact remains that they had not divided any of the property prior to the September 3 contempt hearing. Such failure is in clear violation of the decree of dissolution. We affirm the district court's order finding Trent to be in willful contempt.

*District Court's Imposition of Sanctions.*

Trent also asserts that the district court erred in its imposition of sanctions as a result of the contempt finding. Trent argues, "The Court Order awarding [Rebecca] property valued at $13,376.00 more than that awarded to [Trent] is clear error and an abuse of discretion especially due to the fact that there was no other remedial award considered or entered by the Court such as requiring compliance with the Court's Order." Brief for appellant at 11. Upon our review, we agree with Trent that the district court abused its discretion in determining the sanction to impose for Trent's contempt.

In imposing a sanction against Trent, the district court required both Trent and Rebecca to each retain the tack and tools currently in their possession. Rebecca believed that the tack and tools in her possession were valued at $26,246 and the tack and tools in Trent's possession were valued at $12,870. The district court accepted Rebecca's valuation and indicated that awarding Rebecca approximately $13,000 more in tack and tools than was awarded to Trent was an appropriate sanction for Trent's "substantially" greater contempt.

The district court's decision to sanction Trent by awarding each party the tack and tools in their possession modified the terms of the decree of dissolution. In the decree, the district court ordered, pursuant to the parties' agreement, that the parties were to meet and divide up the tack and tools item by item.

Nebraska law is clear that absent an application and notice requesting modification, a trial court has no power to modify, during the course of contempt proceedings, the terms of an earlier order for support or division of property. *Mays v. Mays*, 229 Neb. 674, 428 N.W.2d 618 (1988). See, also, *Meisinger v. Meisinger*, 230 Neb. 37, 429 N.W.2d 721 (1988); *Neujahr v. Neujahr*, 218 Neb. 585, 357 N.W.2d 219 (1984). Neither Rebecca nor Trent filed an application to modify the dissolution decree. The sole issue before the district court was contempt. "'"A civil contempt has for its purpose the preservation and enforcement of the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce private rights to which the court has found them to be entitled. . . ."'" *Neujahr v. Neujahr*, 218 Neb. at 587, 357 N.W.2d at 221, quoting *Kasparek v. May*, 174 Neb. 732, 119 N.W.2d 512 (1963).

Because the district court did not have the authority to modify the parties' dissolution decree in the course of contempt proceedings, we must find that the court abused its discretion in imposing its sanction against Trent. In reaching this conclusion, we are not unaware of the difficult position the district court was placed in by the parties' actions. As the court noted in its order, the parties never fully itemized or valued the tack and tools at issue. The district court had no real knowledge of what was in each party's possession. In addition, based upon the parties' prior interactions, it appears clear that they lack the ability to divide the tack and tools between themselves. The district court clearly was attempting to provide the parties with some finality on this issue and minimize further contention. Unfortunately, in doing so, the court modified the terms of the decree, which it did not have the power to do during the contempt proceedings. Therefore, we must remand the cause to the district court. The district court is directed to impose a new sanction that addresses Trent's contempt.

*District Court's Award of Attorney Fees.*

Trent asserts that the district court erred in ordering him to pay $1,000 toward Rebecca's attorney fees. We note first that costs, including reasonable attorney fees, can be awarded in a contempt proceeding. *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). On appeal, Trent does not assert that Rebecca failed to prove her fees or that the amount was unreasonable. Instead, his sole argument is that attorney fees should not have been awarded, because he should not have been found to be in contempt of the decree of dissolution. Because we

have concluded above that the court did not err when it found Trent to be in contempt, we further conclude that the court did not abuse its discretion when it awarded attorney fees to Rebecca.

## CONCLUSION

Upon our review, we affirm the portions of the order of the district court which found Trent to be in contempt of the decree of dissolution and which awarded Rebecca $1,000 in attorney fees. However, we conclude that the district court erred in modifying the parties' dissolution decree in the course of the contempt proceedings. We reverse that part of the district court's order which ordered Trent and Rebecca to retain the tack and tools currently in their possession, because such order improperly modified the terms of the decree of dissolution. We remand the cause to the district court for imposition of an appropriate sanction against Trent due to his contempt.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.