MICHAEL B., APPELLEE, V.
DONNA M., APPELLANT.
652 N.W.2d 618

Filed August 27, 2002. Nos. A-01-938, A-01-1044.

Charles R. Maser, of Truell, Murray & Maser, P.C., for appellant.

Mark L. Eurek, of Law Office of Mark L. Eurek, P.C., for appellee.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

This case involves two appeals that have been consolidated for our review. In case No. A-01-938, Donna M. appeals from an

order of the district court for Sherman County, in which order the court took legal custody of her daughter, Taylor M. In case No. A-01-1044, Donna appeals from the same order of the district court, again challenging the court's taking legal custody of Taylor, but also challenging the court's finding that Donna was in contempt for failing to allow Michael B., Taylor's biological father, his court-ordered visitation.

## BACKGROUND

Taylor was born May 12, 1995, and was the result of an extramarital affair between Donna and Michael. At the time of Taylor's birth, Donna was married, and still is, to Richard M. On March 5, 1998, the district court for Sherman County found Michael to be the biological father of Taylor. After such finding, Michael moved for an order granting him temporary visitation. The court appointed Alana Anderson as guardian ad litem to investigate and negotiate a visitation schedule.

At the request of Donna, the parties and Anderson consulted with Dr. Michael Kelley, a psychologist, in order to establish a visitation plan in Taylor's best interests. In Kelley's report, he stated that Taylor exhibited mixed evidence of excessive separation anxiety from Donna, and he found

> strong evidence that Taylor has a significant behavior problem, related to the lack of limits placed on her behavior, which if untreated, will lead to significant adjustment problems for Taylor as she gets older. . . . This behavior problem, if left untreated, will also interfere with the implementation of a reasonable visitation arrangement between Taylor and her biological father.

Kelley recommended that Taylor, and those responsible for her care, be treated by a mental health professional to address Taylor's behavior disorder and that the focus of the treatment would be for the parents to learn limit-setting skills that are firm and nonabusive. Kelley's report also included a recommended visitation arrangement.

On September 11, 1998, following a hearing on visitation, the trial court ordered a specific visitation schedule in accordance with the recommendations of Kelley. The visitation plan consisted of frequent visits of increasing duration. The trial

court further ordered, based on Kelley's recommendation, that Taylor was to begin counseling immediately and that all parties were to participate.

On December 30, 1998, Michael filed a motion for contempt alleging that Donna failed to abide by the visitation schedule set forth in the court's order of September 11. On January 22, 1999, the trial court found that Donna was not in willful contempt.

On April 11, 1999, at the end of a visit, Michael returned Taylor to Donna's son, who took Taylor to her maternal grandparents' home. Shortly thereafter, emergency medical personnel were called to the grandparents' home due to a report that Taylor was not physically responding. Taylor was not taken to the hospital by the emergency personnel at that time because they did not feel that Taylor was in any immediate danger. Subsequently, Donna's son took Taylor to the emergency room, where he reported that Taylor had been unconscious and possibly had had a seizure. The emergency room notes state that "there has been some allegation that there may be some abuse from [Taylor's] biological father as there was some visitation this afternoon and this evening." Taylor was examined at the hospital, wherein no specific abnormalities or indications of abuse were found. Hospital personnel referred Taylor to a pediatric neurologist, who examined Taylor and found normal brainwave activity.

On July 15, 1999, Taylor had her first counseling session pursuant to the trial court's order of September 11, 1998. Taylor met with Doris Harman, a professional counselor, and continued counseling with her until December 1999. Harman testified that before Taylor started her sessions, Donna told her about the visitations with Michael and about behavior problems that were occurring with Taylor, such as Taylor's wetting the bed and not wanting to sleep by herself. Donna also told Harman that Donna was concerned about possible abuse. Harman testified that while counseling Taylor between July and December 1999, Harman saw no signs of physical or sexual abuse.

On March 16, 2000, Taylor began seeing Dr. Cynthia Topf, a clinical psychologist. Donna testified that Taylor started counseling with Topf due to some financial issues and because it was more convenient, since Topf was already counseling the foster

children living in Donna and Richard's home. Topf testified that prior to Taylor's session with her on March 16, Donna told her that Taylor does not want to go on visits with Michael and that Taylor exhibits certain behaviors after visits, such as wetting the bed, having nightmares, and not wanting to take a bath. Taylor met with Topf for the second time on March 17.

Also on March 17, 2000, after Taylor met with Topf, Donna took Taylor to meet Michael for a weekend visitation exchange. Donna had someone with her who videotaped the exchange, pursuant to Topf's recommendation. The videotape shows that Donna did not directly prevent or discourage the visitation, but she allowed Taylor to repeatedly refuse to put her shoes on and to remain inside Donna's vehicle for an hour after Michael arrived. The videotape clearly shows Donna's failure to place limits on the child.

On March 20, 2000, the day after the weekend visitation ended, Taylor met with Topf again. Topf testified that at this session, Taylor acted differently than she did at the first two sessions, and that Taylor "said something like 'he touched me down here' 'down there,' and she grabbed her crotch and she wet herself." Topf testified that at that point, she terminated the session and told Richard, who had brought Taylor to the session, to take Taylor to the hospital to have her examined. Donna and Richard took Taylor to the hospital, where she was referred to "Project Harmony" and was examined. The examination results were inconclusive. Based on the possibility of abuse, the hospital called the police, and the Nebraska State Patrol and the office of the Attorney General began an investigation regarding allegations that Michael had abused Taylor. In May, the Sherman County Attorney and the office of the Attorney General concluded that there was insufficient evidence to charge Michael with a crime relating to sexual abuse of Taylor.

In March 2000, after the sexual abuse investigation began, a criminal complaint against Michael was filed in the county court for Douglas County, based on Donna's assertion that Michael had assaulted her by grabbing her arm. In August, following a hearing, the trial court dismissed the charge.

Also in March 2000, in the district court for Douglas County, Donna filed and was granted a protection order against Michael

on behalf of herself and Taylor. After a hearing in April, the protection order was dismissed.

On April 17, 2000, Michael filed a motion for contempt alleging that Donna had failed to abide by the court's order regarding visitation. His affidavit stated that he was denied visitation on March 4 and 5, March 31 through April 2, and April 14 through April 16. A hearing on the motion was set for May 19, but pursuant to a continuance granted at the request of Donna, the hearing was rescheduled for June 12. The continuance was granted contingent upon Donna's allowing Michael to have his scheduled visitations until the hearing date. Michael's next visitation was scheduled for the weekend of May 19.

At the May 19, 2000, visitation exchange, Donna was not present and the relatives who brought Taylor would not get her out of the car or hand her to Michael. Michael called the police, and when they arrived, Michael was handcuffed and taken to jail on a warrant for his arrest based on Donna's assault allegations.

On June 2, 2000, a juvenile petition was filed by the Douglas County Attorney's office based on affidavits of Topf and Donna stating that Taylor should be placed in the custody of the Department of Health and Human Services (Department) in order to protect her from Michael. Taylor was removed from Donna and Richard's home and taken into custody by the Department and placed in foster care. Donna testified that Taylor was voluntarily placed in the custody of the Department. Michael was granted rights of supervised visitation while Taylor was in foster care.

On June 5, 2000, the hearing on Michael's motion for contempt was continued on the court's own motion, and Anderson was reappointed as guardian ad litem to investigate the circumstances regarding the contempt motion. Anderson was given the authority to order Michael, Donna, Richard, and Taylor to undergo psychological evaluations. Dr. Patricia Sullivan was appointed by the trial court to perform the psychological evaluations. The evaluations took place from July through September.

In July 2000, Anderson terminated Topf as Taylor's therapist. Taylor returned to Harman in August for therapy and was still counseling with her at the time of trial.

The Douglas County Attorney's office moved the court to dismiss the pending juvenile case regarding Taylor, and on November

29, 2000, the case was dismissed. The dismissal was based on affidavits of Topf and Harman, in which each stated that it is in Taylor's best interests to be returned to Donna's custody.

On December 6, 2000, Michael filed a petition for change of custody of Taylor. On January 11, 2001, the Douglas County Attorney's office filed another juvenile petition regarding Taylor. The petition was filed based on affidavits of Topf and Donna asking the court to file another petition. The hearing for Michael's contempt and custody motions was continued, and the district court determined that it should abate all further action concerning the custody and visitation of Taylor awaiting completion of the action pending in the juvenile court. The Douglas County Attorney's office subsequently filed a motion to dismiss the second juvenile case, and the court dismissed it.

In May and June 2001, a trial was held on Michael's motion for contempt, which had been filed on April 17, 2000, and his motion for change of custody, which had been filed on December 6. At the time of trial, Michael had not had a court-ordered visitation since March 17, 2000, and he had not had any visitation with Taylor, including supervised visitation, since November.

Donna testified that Michael had asked for visitation on numerous occasions since March 20, 2000, and that she had denied him visitation. She admitted that the only visitation Michael had had since March 2000 was when Taylor was in foster care and he got supervised visitations. She testified that she had denied Michael visitations based on the recommendations of Topf and Harman.

Michael testified that when Donna was allowing him visitations, she would call his home late at night to check on Taylor, and that she had the sheriff's office go to his house on two occasions in 1999 to see if Taylor was okay. One of these occurrences took place at 2:30 a.m. Michael testified that his last visitation pursuant to the court order was the weekend of March 17, 2000. He testified that he had tried to get visitation with Taylor after the determination that the abuse allegations were unfounded, but that Donna had denied him visitation. He testified that he had had supervised visits when Taylor was in foster care, but that he had not seen Taylor since November.

Sullivan testified regarding the results of the psychological evaluations she performed on Michael, Donna, Richard, and Taylor. In regard to Taylor's interaction with Michael, Sullivan testified that Taylor enjoyed being with him, that they played well together, and that Taylor had no fear of him. Sullivan testified that an attachment exists between Taylor and Michael. Sullivan testified that when all four parties were together, Taylor looked to Donna and Richard for approval to have a good time with Michael.

Sullivan diagnosed Taylor with oppositional defiant disorder. She testified that at times, Taylor can be noncompliant and ill-mannered and have an aggressive posture. Sullivan testified that Taylor is a child "who desperately needs parenting." Sullivan testified that Taylor is attached to all three parental figures in her life, but that she needs to spend significantly more time with Michael because he is the most psychologically adjusted of the three parental figures, has the least rancor toward the other parental figures, and is very focused on Taylor's developmental needs. In Sullivan's opinion, it would be in Taylor's best interests for Michael to have custody of Taylor.

Anderson testified that she was first appointed as guardian ad litem in 1998 and that her involvement ended in January 2001. She testified that she believes that Donna and Richard provided Topf, Harman, and the juvenile court with distorted and inaccurate information regarding Taylor's behaviors following visitations with Michael. Anderson testified that many of the behaviors reported to Topf and Harman existed before visitations with Michael began. Anderson testified that she has more confidence in Michael than in Donna regarding the recognition of Taylor's needs and the ability to permit the other parent to have a relationship with Taylor.

Topf testified that in her opinion, Taylor needs to remain in Donna's custody and have either supervised or therapeutic visitations with Michael. Topf further testified that if custody was granted to Michael, Taylor would regress, be traumatized, and likely require hospitalization.

Harman testified that it was apparent to her Donna did not want Michael's visitations to occur and that Harman was sure there were legal maneuvers done to prevent visitation. Harman

was of the opinion that it would be detrimental to Taylor to have custody changed to Michael and that his visitations should be supervised.

In a July 10, 2001, order, the trial court found that Donna was in willful contempt for failing to allow Michael visitation as ordered. The trial court further ordered that a hearing would be held on August 17 to determine the appropriate sanctions for contempt. Regarding the motion for change of custody, the trial court granted it to the extent that the court took legal custody of Taylor "in order to immediately change custody to [Michael] if [Donna] continues to thwart [Michael's] visitation rights." The trial court allowed Donna to keep physical custody of Taylor. Michael's visitation, as previously ordered, was to commence immediately. On August 9, Donna filed a notice of appeal from the trial court's July 10 order (case No. A-01-938). In Donna's appellate brief, she challenges the trial court's decision to take legal custody of Taylor and argues that the trial court should have ordered Michael's visitations to be supervised or that the court should have ordered no visitations at all.

On September 12, 2001, following the August 17 hearing to determine Donna's contempt sanctions, the trial court filed its order sentencing Donna to 90 days in the county jail, but allowed her to purge her contempt by letting Michael have visitation as previously ordered. She was also ordered to pay costs of the matter in the amount of $5,969.67 and Michael's attorney fees in the amount of $7,000. On September 18, Donna filed a notice of appeal from the September 12 order (case No. A-01-1044). In Donna's appellate brief, she assigns the same errors as in the first appeal and raises two additional assignments of error, challenging the trial court's finding of contempt and its assessment of attorney fees and costs. We consolidated the two appeals for our review.

## ASSIGNMENTS OF ERROR

Donna assigns that the trial court erred in (1) taking legal custody of Taylor, (2) not ordering visitations with Michael to be supervised and in ordering visitations at all, (3) finding that Donna was in willful contempt of a court order, and (4) assessing her $7,000 in Michael's attorney fees and $5,969.67 in costs.

## SCOPE OF REVIEW

Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002); *Jack v. Clinton*, 259 Neb. 198, 609 N.W.2d 328 (2000). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

Where credible evidence is in conflict on a material issue of fact, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994), *overruled in part on other grounds, Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999); *Hansen v. Hansen*, 240 Neb. 31, 480 N.W.2d 204 (1992).

## ANALYSIS

*Jurisdiction.*

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Scottsdale Ins. Co. v. City of Lincoln*, 260 Neb. 372, 617 N.W.2d 806 (2000); *Billingsley v. BFM Liquor Mgmt.*, 259 Neb. 992, 613 N.W.2d 478 (2000). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Scottsdale Ins. Co. v. City of Lincoln, supra; Chief Indus. v. Great Northern Ins. Co.*, 259 Neb. 771, 612 N.W.2d 225 (2000). When an appellate court is without jurisdiction to act, the appeal must be dismissed. *Scottsdale Ins. Co. v. City of Lincoln, supra.*

Donna filed her first appeal, case No. A-01-938, after the trial court filed its order taking legal custody of Taylor and finding Donna in contempt, but before the trial court held the hearing to determine the contempt sanctions. Donna's first appeal challenges only the trial court's taking legal custody and ordering

visitation, but it does not challenge the court's finding of contempt. Therefore, we must determine whether the court's order taking legal custody of Taylor, in and of itself, constitutes a final, appealable order.

The three types of final orders which may be reviewed on appeal under Neb. Rev. Stat. § 25-1902 (Reissue 1995) are (1) an order which affects a substantial right in an action and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001); *Jacobson v. Jacobson*, 10 Neb. App. 622, 635 N.W.2d 272 (2001). Orders which fall into the second category of § 25-1902 must meet two requirements: a substantial right must be affected, and the court's order must be made in a special proceeding. *Hernandez v. Blankenship*, 257 Neb. 235, 596 N.W.2d 292 (1999); *Jacobson v. Jacobson, supra.* The Nebraska Supreme Court has construed the phrase "special proceeding" to mean civil statutory remedies not encompassed in chapter 25 of the Nebraska Revised Statutes. See, *In re Estate of Peters*, 259 Neb. 154, 609 N.W.2d 23 (2000); *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994), *overruled in part on other grounds, Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999). Under this definition, custody determinations, which are controlled by Neb. Rev. Stat. § 42-364 (Reissue 1998), are considered special proceedings. *State ex rel. Reitz v. Ringer, supra.* Accordingly, if the trial court's order affected a substantial right of Donna, it would be considered a final order. The Nebraska Supreme Court has stated that a parent " 'has a liberty interest in raising her or his child, a concept which encompasses the child's custody, care, and control.' " *Id.* at 980, 510 N.W.2d at 299, quoting *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). " '[T]he relationship between parent and child is constitutionally protected.' " *State ex rel. Reitz v. Ringer*, 244 Neb. at 980-81, 510 N.W.2d at 299, quoting *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978). It is thus clear that the trial court's order regarding custody affected a substantial right of Donna and is a final order.

The fact that the trial court scheduled a hearing to determine the contempt sanctions for a later date, thus making the contempt portion of the order not final, is of no consequence under the circumstances of this case. The court was presented with two separate issues, a motion for contempt and a motion for change of custody. The court simply chose to address the two motions at the same trial. The court's order that took legal custody of Taylor decided all of the issues before it regarding custody and visitation and did not reserve ruling on any issues related to custody or visitation. The court's order taking legal custody of Taylor was an order affecting a substantial right made during a special proceeding and thus was a final, appealable order. Therefore, in case No. A-01-938, we have jurisdiction to address Donna's appeal.

Donna's second appeal, case No. A-01-1044, raises the same issues concerning custody and visitation as the first appeal and also challenges the court's finding of contempt and its assessment of attorney fees and costs. The custody and visitation issues are already before us as previously determined. In addition, we determine that the court's finding of contempt is not appealable.

In determining whether contempt orders are appealable, the Nebraska Supreme Court has distinguished between civil, or coercive, sanctions and punitive sanctions. See, e.g., *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991); *Hammond v. Hammond*, 3 Neb. App. 536, 529 N.W.2d 542 (1995). When a coercive sanction is imposed, the contemnor holds the keys to his or her jail cell because the sentence is conditioned upon the contemnor's continued noncompliance with the court's order. *Id.* An order imposing a coercive sanction in a civil contempt proceeding is always subject to modification by the contemnor's conduct and thus is not a final, appealable order. *Dunning v. Tallman*, 244 Neb. 1, 504 N.W.2d 85 (1993); *Hammond v. Hammond, supra*. Rather, a coercive sanction can only be attacked collaterally by habeas corpus. *Maddux v. Maddux, supra*; *Hammond v. Hammond, supra*. On the other hand, a punitive contempt sanction is like a criminal sentence, because it is not subject to mitigation should the contemnor comply with the court order. A punitive contempt sanction thus is a final, appealable order. *Id.*

In the present case, the trial court found that Donna was in contempt and sentenced her to 90 days in jail, but allowed her to avoid the contempt sanction of jail time by letting Michael have visitation as previously ordered by the court. Donna's sentence was conditioned upon her continued noncompliance with the court's visitation order. Therefore, the nature of the imposed sanction was coercive and is not an appealable order.

*Attorney Fees and Costs.*

Donna also argues in case No. A-01-1044 that the trial court erred in assessing her $7,000 in Michael's attorney fees and $5,969.67 in costs for the action. In a civil contempt proceeding, costs, including a reasonable attorney fee, may be assessed against a contemnor. *Dunning v. Tallman, supra.* See *Kasparek v. May,* 174 Neb. 732, 119 N.W.2d 512 (1963). " 'When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.' " *Dunning v. Tallman,* 244 Neb. at 13-14, 504 N.W.2d at 94, quoting *Young v. Dodge Cty. Bd. of Supervisors,* 242 Neb. 1, 493 N.W.2d 160 (1992). At the contempt sanction hearing, Michael presented evidence to show that he has incurred nearly $20,000 in attorney fees since March 2000 as a result of preparing for the contempt hearing, challenging the protection order, defending against the criminal complaint, and defending against the first juvenile action. The record also shows that Sherman County has paid costs in the amount of $5,969.67 during the time period of June 2000 to February 2001. Therefore, the amount of attorney fees and costs awarded by the trial court are supported by sufficient evidence, and the trial court's ruling was not an abuse of discretion. As such, we affirm the trial court's judgment assessing Michael's attorney fees and costs in the matter to Donna.

*Legal Custody.*

Donna assigns that the trial court abused its discretion in taking legal custody of Taylor. Ordinarily, legal custody of children should not be placed in the court unless both parents are unfit or the best interests of the children, in regard to custody, are not clear. *Petrashek v. Petrashek,* 232 Neb. 212, 440 N.W.2d 220 (1989).

In *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988), the Nebraska Supreme Court found that § 42-364 authorizes a court, in proceedings to dissolve a marriage, to place the custody of minor children in the court, to determine custody on the basis of the best interests of the children, and to make subsequent changes when required. Although the present case does not involve a marriage dissolution, it does involve the custody determination of a minor child between the biological parents, and therefore, § 42-364 and the relevant case law is applicable. The *Ensrud* court stated:

> "When the best interests of the children, in regard to custody, is not clear, the court may, and should, place custody in the court. . . .
>
> "It is evident that when a court finds it necessary to place custody of minor children in the court, it does so because it is doubtful that it is cognizant of the full story relating to the best interests of the children and of the propriety of awarding custody to one of the parties. Such an order is ordinarily temporary and probationary in nature and reserves in the court the power to make further summary disposition of minor children when it becomes apparent that their best interests require it. There has not been a final determination of fitness in regard to either party. That question remains open and subject to determination after further notice and hearing."

230 Neb. at 725, 433 N.W.2d at 196, quoting *Bartlett v. Bartlett*, 193 Neb. 76, 225 N.W.2d 413 (1975).

The holding in *Ensrud* was somewhat refined by the Nebraska Supreme Court's decision in *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 982-83, 510 N.W.2d 294, 300 (1994), *overruled in part on other grounds, Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999), when it held:

> Although in *Ensrud* we suggested that a court must always, prior to acquiring custody of a minor, make a preliminary determination as to parental fitness, there can be no such requirement when the court wishes to take custody so that it can acquire further information on parental fitness. Here, the trial court acknowledged that it needed more information in order to make an informed decision regarding

parental fitness. Requiring the trial court to rule on parental fitness before that information is obtained would put the "cart before the horse." *Ensrud* is, therefore, inapplicable.

We conclude that the trial court did not abuse its discretion in taking legal custody of Taylor. At the time of the trial court's order, the best interests of Taylor in regard to custody were unclear. The trial court took legal custody so it could acquire further information before making a decision regarding the permanent custody of Taylor. The evidence at trial showed that Donna had been denying Michael visitations with Taylor and that she did not want Michael to have visitations. Following trial, the court's order taking legal custody of Taylor was concurrent with its finding that Donna was in contempt for failing to abide by the court-ordered visitation schedule. The finding of contempt provided a method to enforce visitation. If Donna continued to deny Michael visitation going forward, she would go to jail. The trial court took legal custody so it could wait and see what effect the finding of contempt would have on Donna in regard to Michael's visitation. If Donna were to allow visitations going forward, Taylor and Michael could restart building the relationship they had begun to establish and Taylor could remain living in the home she has always known. If this occurs, it may be in Taylor's best interests to continue custody with Donna. However, if Donna continues to deny Michael visitation, thereby denying Taylor a relationship with her father, it may be in Taylor's best interests to change custody to Michael and allow Donna visitation, so that Taylor would have both parents in her life. The trial court took legal custody temporarily so it could see what effect the finding of contempt would have on Donna and could then make a final determination as to what is in Taylor's best interests as far as custody. Accordingly, the trial court did not abuse its discretion in taking legal custody of Taylor, and Donna's assignment of error is without merit.

*Visitation.*

Next, Donna assigns that the trial court erred in not ordering that Michael's visitations be supervised and in ordering visitations at all. Her argument is based on Topf's and Harman's testimonies that visitations with Michael should be supervised.

However, these opinions were based on the belief shared by Topf and Harman that Michael has abused Taylor. The opinions of Topf and Harman must also be considered in light of the fact that they were both of the opinion that it was in Taylor's best interests that custody remain with Donna. The opinions of Topf and Harman must also be weighed against the opinions of Anderson and Sullivan, who believed that it would be in Taylor's best interests to give custody to Michael. The record also demonstrates that the sexual abuse allegations against Michael are no longer being pursued by the authorities, and all other legal maneuvers against Michael have been dismissed. Based on the evidence presented, we conclude that the trial court did not abuse its discretion in not ordering that visitations be supervised and in ordering visitations to commence immediately as previously ordered.

*Cross-Appeal.*

The last section of Michael's brief is entitled "CROSS APPEAL," in which he asserts that the trial court should have given him custody of Taylor. Regarding cross-appeals, Neb. Ct. R. of Prac. 9D(4) (rev. 2000) provides:

> Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief. This division shall be headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant.

The appellate courts of this state have repeatedly indicated that a cross-appeal must be properly designated, pursuant to rule 9D(4), if affirmative relief is to be obtained. See, *Schindler v. Walker*, 256 Neb. 767, 592 N.W.2d 912 (1999); *Osborn v. Kellogg*, 4 Neb. App. 594, 547 N.W.2d 504 (1996); *Ainslie v. Ainslie*, 4 Neb. App. 70, 538 N.W.2d 175 (1995), *affirmed* 249 Neb. 656, 545 N.W.2d 90 (1996). Michael has failed to fulfill the requirements of rule 9D(4), and thus, he has failed to properly cross-appeal. Therefore, we do not address his argument.

## CONCLUSION

We conclude that the trial court did not abuse its discretion in taking legal custody of Taylor and in ordering that Michael's visitations with Taylor were to commence as previously ordered. We also conclude that the trial court did not abuse its discretion in

assessing Donna $7,000 in Michael's attorney fees and $5,969.67 in costs.

AFFIRMED IN PART, AND IN PART DISMISSED.