Kathleen Belitz, now known as Kathleen Monaco, appellee, v. John F. Belitz, Jr., appellant.
___ N.W.2d ___

Filed January 28, 2014.    No. A-12-461.

1. **Jurisdiction: Appeal and Error.** An appellate court determines jurisdictional questions that do not involve a factual dispute as a matter of law.
2. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.
3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.
4. **Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.
5. **____: ____.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered.
6. **Child Custody.** A proceeding regarding a child custody determination is considered a special proceeding under Nebraska law.
7. **Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.
8. **Final Orders.** When an order affects the subject matter of the litigation, by diminishing a claim or defense available to a party, the order affects a substantial right.
9. **Parental Rights: Final Orders.** Whether a substantial right of a parent has been affected by an order is dependent upon both the object of the order and the length of time over which the parent's relationship with the child may reasonably be expected to be disturbed.
10. **Child Custody: Final Orders.** Where child custody is modified on a permanent basis, the order clearly affects a substantial right.
11. **Final Orders: Appeal and Error.** When multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while reserving other issues for later determination, the court's determination of fewer than all the issues is an interlocutory order and is not a final order for the purpose of an appeal.

12. **Contempt: Words and Phrases.** When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily a civil contempt, which requires willful disobedience as an essential element. "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order.

13. **Contempt: Proof.** Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence.

14. **Jurisdiction: Appeal and Error.** Once an appeal has been perfected, the trial court from which the appeal was taken no longer has jurisdiction.

15. **Jurisdiction: Time: Appeal and Error.** A party's failure to timely appeal from a final order prevents an appellate court from exercising jurisdiction over the issues raised and decided in that order.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Affirmed in part, and in part dismissed.

Joan Watke Stacy for appellant.

Joni Visek for appellee.

Moore, Pirtle, and Bishop, Judges.

Moore, Judge.

John F. Belitz, Jr., appeals following three orders of the district court for Douglas County which, among other things, modified the custody arrangement in the parties' decree of dissolution and awarded custody of the parties' youngest daughter, Katherine Belitz, to Kathleen Belitz, now known as Kathleen Monaco. John asserts the district court committed a number of errors in its orders, including in modifying custody, allowing the parties' older daughters to testify at trial, improperly calculating child support, awarding Kathleen attorney fees, failing to find Kathleen in contempt, and entering an order releasing garnished funds after John had filed his notice of appeal.

For the reasons that are set out in our analysis below, we find that we do not have jurisdiction to address John's arguments related to the modification order or the garnishment proceedings. We also conclude that the district court did not abuse its discretion when it declined to find Kathleen in contempt of previous orders.

## I. FACTUAL BACKGROUND

This protracted custody dispute now makes its fourth appearance in this court. Due to the extensive history of this case, we will not recount the entire factual background in this opinion, but instead focus on the facts pertinent to this decision. For a full account of the proceedings in this case, we direct the reader to our three previous opinions. See *Belitz v. Belitz*, 8 Neb. App. 41, 587 N.W.2d 709 (1999); *Belitz v. Belitz*, No. A-02-973, 2003 WL 21648118 (Neb. App. July 15, 2003) (not designated for permanent publication); and *Belitz v. Belitz*, 17 Neb. App. 53, 756 N.W.2d 172 (2008).

During their marriage, John and Kathleen had three daughters: the first daughter, born in October 1994; the second daughter, born in March 1996; and the third daughter, Katherine, born in July 1997. After the parties' divorce in 1998, Kathleen moved to Chicago, Illinois, and is now remarried with four additional children. Following their divorce, John and Kathleen have engaged in substantial litigation over custody and parenting time.

In the decree of dissolution, Kathleen was originally granted custody and given permission to remove the parties' three daughters to Illinois. She later lost her rights as custodial parent after the district court granted John's application to modify in July 2002. After that modification, the parties' daughters returned to Omaha, Nebraska, and have been living with John since. Kathleen has remained living in Chicago with her subsequent family.

The present appeal relates to a series of events that began during Kathleen's parenting time with the parties' three daughters in the summer of 2010. Under the custody order in effect at the time, the parties' daughters frequently traveled to Chicago to visit Kathleen. At some point during that summer, the parties' youngest child, Katherine, believed that John had agreed to allow her to move to Chicago to live with Kathleen. John disagreed that he had given Katherine permission to move to Chicago to live with her mother, but stated that he agreed to consider Katherine's wishes if he and Kathleen could come to agreement on a number of matters. However, communication between John and Kathleen soon

broke down and no mutual agreement was reached by the end of the summer.

At the beginning of August 2010, the two older daughters returned to Omaha after being with Kathleen as scheduled, but Katherine did not. Upon their return, the older daughters informed John that Katherine was not coming back to Omaha. On August 11, John initiated contempt proceedings against Kathleen by filing an application for an order to show cause. In his application, John alleged that Kathleen should be found to be in contempt of court because she had not paid his attorney fees as mandated by the previous modification order and because she failed to return Katherine to Omaha within the time specified by the court order. On August 12, the district court signed an order to show cause and an ex parte order requiring Kathleen to return Katherine to Omaha within 24 hours of service of the order; however, the ex parte order was not filed until August 30. Kathleen filed a motion for modification on August 13, seeking custody of Katherine.

Despite four attempts, the sheriff's office of DuPage, Illinois, was not able to personally serve Kathleen with the ex parte order. This prompted John to file a motion for alternate service and for an ex parte order, requesting the district court order Katherine's return. In response, Kathleen filed a motion for temporary allowances, asking the court to award her temporary custody of Katherine. On August 30, 2010, the district court granted John's motion for alternate service, issued an ex parte order commanding Kathleen to return Katherine to Omaha by 6 p.m. on September 1, and issued an order requiring Kathleen to appear and show cause as to why she should not be held in contempt. The hearing on the order to show cause was later continued until the trial on Kathleen's complaint to modify. Kathleen returned Katherine to Omaha on September 1. After her return, Katherine continued living with John, completing the eighth grade and beginning her freshman year of high school.

Trial was held on August 22 and September 23, 2011. During the trial, the parties adduced evidence regarding the complaint to modify custody as well as the order to show cause regarding Kathleen's alleged contempt. On March 2,

2012, the district court issued its order of modification, finding a "sufficient change in circumstance" and finding that Katherine's best interests required that Kathleen be awarded custody. In its order, the court also noted that it did not find awarding Kathleen custody of Katherine constituted a removal as defined under Nebraska law, but stated that the requirements for removal would have been met. In addition to granting Kathleen custody of Katherine, the district court granted John the same parenting time rights as Kathleen received when she was the noncustodial parent and ordered John to pay $431.26 per month to Kathleen in child support and $7,500 of Kathleen's attorney fees. John did not directly appeal from that order.

Following the modification order, John apparently attempted, unsuccessfully, to electronically file a motion for a new trial. However, the court noted no evidence was adduced to support this assertion. Thus, the court denied John's request to consider John's alleged electronically filed motion for new trial and would not allow John to submit a motion for new trial out of time.

Because the district court's modification order did not address his contempt application, John filed a pleading styled as "Motions in the Alternative" on April 19, 2012. In this single filing, John included three alternative motions: (1) a motion for "entry of a final order or judgment to include final determinations and findings as to all the claims between the parties"; (2) a motion requesting an "express finding that although not all claims between the parties has [sic] been made there is no just reason for delay and an express direction for the entry of judgment"; and (3) a motion for "correction of the record." The basis of John's argument in this filing was that the modification order was not a final, appealable order because it did not address the two contempt issues. Thus, he requested that the district court enter a final order on the contempt issues, certify a final judgment pursuant to Neb. Rev. Stat. § 25-1315 (Reissue 2008), or utilize its statutory power under Neb. Rev. Stat. § 25-2001 (Reissue 2008) to correct the record and find that his motion for new trial was timely filed.

On April 20, 2012, the district court entered an order finding that Kathleen was not in contempt of court for failing to pay John's attorney fees as required by the prior modification order. The court concluded that Kathleen did not have the ability to make the payments as required by the order and, therefore, did not willfully disobey the order.

On May 7, 2012, John filed another motion requesting that the district court enter an amended order resolving all issues that were presented to the court. In this motion, John asserted that the district court had not resolved the issue of whether Kathleen had violated the previous order of modification by refusing to send Katherine back to Omaha at the end of Kathleen's summer parenting time in 2010. John requested that the district court enter an amended order containing findings from all issues before the court. After a hearing on this motion on May 11, the court entered an order on May 22, finding that Kathleen was not in contempt for failing to return Katherine at the conclusion of Kathleen's parenting time in 2010. The court noted that the order resolved all issues raised at trial.

To recover the attorney fees John was ordered to pay in the March 2, 2012, modification order, Kathleen's attorney began garnishment proceedings. On May 11, the district court entered an order to deliver nonexempt funds from John's bank to the court for payment to Kathleen's attorney. On May 17, John filed a motion for an injunction to prohibit Kathleen from executing on the judgment, to vacate the order to deliver nonexempt funds, and to demand the return of the funds delivered. The court denied this motion in an order filed on May 29.

On May 22, 2012, John filed a notice of intention to appeal in which he indicated that he was appealing from the orders dated March 2, 2012; April 20, 2012; and May 22, 2012.

## II. ASSIGNMENTS OF ERROR

In his brief, John assigns and argues nine errors. However, because of our conclusion regarding jurisdiction, we discuss only two of these errors in order to resolve this appeal. John contends, restated, that the district court erred in not finding

Kathleen in contempt for either (1) failing to pay attorney fees from a 2007 modification order or (2) failing to return Katherine to Omaha at the end of her summer parenting time in 2010.

## III. STANDARD OF REVIEW

[1] An appellate court determines jurisdictional questions that do not involve a factual dispute as a matter of law. *Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013).

[2] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

## IV. ANALYSIS

### 1. Jurisdiction Over Modification Order

[3,4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *Sutton v. Killham, supra*. For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. *Selma Development v. Great Western Bank*, 285 Neb. 37, 825 N.W.2d 215 (2013).

Without noting any distinction in the various orders, Kathleen argues that we are without jurisdiction to hear this entire appeal. Citing prior case law which establishes that proceedings regarding modification of a marital dissolution and custody determinations are considered special proceedings, Kathleen argues the March 2, 2012, modification order affecting child custody was a final order from which John had 30 days to appeal. See *Steven S. v. Mary S.*, 277 Neb. 124, 760 N.W.2d 28 (2009). Because John did not file his notice of appeal until May 22, Kathleen argues, it was untimely and

should be dismissed. See Neb. Rev. Stat. § 25-1912(1) (Reissue 2008) (appeal must be filed within 30 days of entry of judgment, decree, or final order).

[5,6] Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. As Kathleen correctly states in her brief, a proceeding regarding a child custody determination is considered a special proceeding under Nebraska law. See *Steven S. v. Mary S., supra*.

[7-10] Because this child custody proceeding was a special proceeding, we move on to consider whether a substantial right was affected. A substantial right is an essential legal right, not a mere technical right. *Id*. When an order affects the subject matter of the litigation, by diminishing a claim or defense available to a party, the order affects a substantial right. *Id*. Whether a substantial right of a parent has been affected by an order is dependent upon both the object of the order and the length of time over which the parent's relationship with the child may reasonably be expected to be disturbed. *McCaul v. McCaul*, 17 Neb. App. 801, 771 N.W.2d 222 (2009). Where child custody is modified on a permanent basis, the order clearly affects a substantial right. *Id*. Because the district court's order of modification in this case permanently awarded Kathleen custody of Katherine, John's substantial right as a custodial parent was affected. Thus, the March 2, 2012, order of modification was a final and appealable order. See *id*.

[11] However, John contends that the modification order was not a final and appealable order because it did not dispose of all the issues that were presented to the court during the trial. Specifically, John argues there was no final judgment until the district court entered its order on the final contempt issue on May 22, 2012, which resolved the last remaining issue brought by the parties. To support his position, John directs us to case law which holds that when multiple issues are presented to a

trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while reserving other issues for later determination, the court's determination of fewer than all the issues is an interlocutory order and is not a final order for the purpose of an appeal. See *Wagner v. Wagner*, 275 Neb. 693, 749 N.W.2d 137 (2008). *Wagner* concluded that a trial judge's letter to the parties' attorneys following a divorce trial did not constitute a final order because not all issues were determined in the letter, such as the actual dissolution of the marriage. The case before us involves a custody modification action filed by one party and a contempt action filed by the other, and it therefore presents a jurisdictional matter not addressed in *Wagner*.

We conclude that we do not have jurisdiction to address John's appeal as it relates to the modification order. Our decision in *Michael B. v. Donna M.*, 11 Neb. App. 346, 652 N.W.2d 618 (2002), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), effectively determines this outcome. In that case, the district court held a trial on the father's motion for contempt on the same day as his motion for change of custody. Following the trial, the district court entered an order in which it found the mother in contempt for failing to allow the father's visitation and also took legal custody of the couple's minor child. *Id.* The district court also ordered a further hearing to determine the appropriate sanctions for the mother's contempt, making the contempt portion of the order not final. *Id.* After that hearing, the court issued a subsequent order with sanctions against the mother. *Id.* The mother filed a timely notice of appeal from each order. *Id.*

In that case, we consolidated the two appeals and determined that the order taking legal custody of the minor child was a final, appealable order even though the contempt portion of the order was not final. We reasoned that the trial court was presented with two separate issues and simply chose to address both at the same trial. Thus, the order that took legal custody of the minor child was a final, appealable order because it was an order affecting a substantial right made during a special

proceeding. *Id*. The fact that the contempt portion of the order was not final was of no consequence. *Id*.

In the present case, Kathleen's application to modify custody of Katherine and John's application for an order to show cause were two separate pleadings and presented separate issues. Kathleen sought new relief in her cause of action to change custody of Katherine. When filing his contempt action against Kathleen, John did not seek new relief; rather, he sought to enforce relief he had previously been granted. The district court heard evidence on both issues at the same hearing. On March 2, 2012, the court issued an order which disposed of all issues that were raised in Kathleen's application to modify. Thus, that order was a final, appealable order. Because John did not file his notice of appeal until May 22, outside the 30-day requirement in § 25-1912(1), we are without jurisdiction to address the portion of his appeal that relates to that order.

### 2. JURISDICTION OVER CONTEMPT ORDERS

We conclude that we have jurisdiction to address John's arguments as they relate to both of the district court's orders on his contempt application. Although the district court entered two separate orders related to the issues John raised in his application, he was not required to separately appeal from each order. Because John's application contained two discrete claims of Kathleen's alleged contempt, the contempt issues were not appealable until the court disposed of all claims raised in John's application. See, *Becerra v. United Parcel Service*, 284 Neb. 414, 822 N.W.2d 327 (2012); *Huffman v. Huffman*, 236 Neb. 101, 459 N.W.2d 215 (1990) (when multiple issues are presented to trial court for simultaneous disposition in same proceeding and court decides some of issues, while reserving some issue or issues for later determination, court's determination of fewer than all issues is interlocutory order and is not final order for purpose of appeal).

### 3. CONTEMPT FINDINGS

John argues that the district court erred when it failed to find Kathleen in contempt for violating the prior modification

order. As stated above, John raised two separate issues in his application for an order to show cause: (1) Kathleen's failure to pay the attorney fee award entered in his favor from the prior modification proceeding and (2) Kathleen's failure to timely return Katherine to Omaha following summer parenting time in 2010.

[12,13] Before separately addressing each of these issues in our analysis below, we set out some general principles regarding contempt proceedings. When a party to an action fails to comply with a court order made for the benefit of the opposing party, such act is ordinarily a civil contempt, which requires willful disobedience as an essential element. "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence. *Id*.

### (a) Kathleen's Failure to Pay Attorney Fee Award From Prior Modification Order

Following its order of modification, the district court first addressed Kathleen's failure to pay the $10,000 attorney fee award entered against her from the 2007 modification order. The court entered an order on April 20, 2012, in which it declined to find Kathleen in contempt for failure to pay that award. In so ruling, the court noted that because Kathleen did not have the financial means to satisfy the entire award, her failure to pay the award cannot be considered willful contempt of court.

We agree with the trial court's conclusion. After our review of the record, we find that Kathleen has been making consistent, albeit small, monthly payments against this attorney fee award. Kathleen also testified at trial that she struggles to make these payments because she is a stay-at-home mother caring for her four children from her subsequent marriage. Although her payments have been small, and interest continues to accrue on this amount, we conclude that Kathleen is attempting to fulfill her obligation to pay. We further note that

the 2007 modification order does not contain any time limitation for paying the attorney fee award. Therefore, her failure to satisfy the entire award was not willful disobedience of the 2007 order. The district court did not abuse its discretion when it found that Kathleen was not in contempt of court. This assigned error is without merit.

### (b) Kathleen's Failure to Return Katherine to Omaha After 2010 Parenting Time

At the May 11, 2012, hearing, the district court determined that Kathleen did not commit willful contempt relating to Katherine's return to Omaha after the 2010 summer parenting time. An order memorializing this ruling was entered on May 22, but no specific findings of fact were made. John takes issue with that decision, contending that the evidence at trial was sufficient to sustain a finding that Kathleen was in contempt.

As we noted at the outset of this opinion, John's initial willingness to consider Katherine's move to Chicago to live with her mother seems to have been the triggering event for this modification proceeding. According to John's testimony, however, Katherine misconstrued his willingness to consider the move for explicit permission allowing the move to take place. To attempt to clarify his position, John sent subsequent e-mails to Kathleen explaining the situation and his concerns about Katherine's move. When communication between John and Kathleen broke down later that summer, before any final agreement on Katherine's living situation was reached, John expected Katherine's return to Omaha. Upon being informed by his other daughters that Katherine was not coming back to Omaha, John sent a series of e-mails to Kathleen demanding Katherine's return. Although the order and parenting plan in the record do not contain an exact date for the end of Kathleen's summer parenting time, according to the testimony at trial, both parties agreed their daughters were to return to Omaha on August 9, 2010.

At trial, Kathleen testified that she tried to get Katherine to return to Omaha on August 9, 2010, but "couldn't get her on the plane." Kathleen stated that because she "felt bad" for

Katherine, she did not force her to return to Omaha at the end of the summer. Kathleen also admitted to having registered Katherine as a student at the local public high school, despite knowing that John demanded she not do so. According to her testimony, Kathleen registered Katherine for school because she did not want Katherine to be truant during the dispute with John about her return. Kathleen claimed that she was finally able to convince Katherine to return only because she assured Katherine of an opportunity to speak in court regarding her preference to move to Chicago. Katherine was returned to Omaha on September 1.

Although Katherine was not returned to Omaha on August 9, 2010, our de novo review of the record leads us to conclude that the district court did not abuse its discretion in failing to find Kathleen in contempt. There was no court order which specifically required Kathleen to return Katherine on a date certain, although there was testimony to an agreed-upon date. There was ongoing discussion during the summer between the parties regarding the possibility of Katherine's remaining in Kathleen's custody in Chicago. A few days after the previously agreed-upon return date, Kathleen filed an application to modify custody. Kathleen was not served with the original ex parte order to return Katherine to Omaha, obtained by John on August 12, which order was not filed until August 30. Another order was entered on August 30, requiring Kathleen to return Katherine on September 1, which Kathleen complied with. Under the particular facts of this case, we affirm the district court's determination that Kathleen's actions did not amount to a clearly willful violation of prior court orders.

### 4. Order Releasing Garnished Funds

John finally argues that the district court erred when it entered an order releasing garnished funds on May 29, 2012. He argues the court lacked jurisdiction to enter this order because he had filed his notice of appeal and posted the required supersedeas bond on May 22.

In addressing this assigned error, we initially note that John's characterization of the May 29, 2012, order is not completely accurate. The district court entered an order on May 11

to deliver nonexempt funds. On May 17, John filed a motion for an injunction to prohibit Kathleen from executing on the judgment, to vacate the order to deliver nonexempt funds, and to demand the return of the funds delivered. The district court denied John's motion on May 29. Kathleen also filed a receipt of garnished funds on May 29.

[14,15] Subject to few exceptions, once an appeal has been perfected, the trial court from which the appeal was taken no longer has jurisdiction. See *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012). However, a party's failure to timely appeal from a final order prevents an appellate court from exercising jurisdiction over the issues raised and decided in that order. *Pinnacle Enters. v. City of Papillion*, 286 Neb. 322, 836 N.W.2d 588 (2013).

As we concluded above, Kathleen's application for modification of custody and John's contempt application were two separate proceedings. Thus, John was required to perfect an appeal within 30 days of the March 2, 2012, modification order to obtain review of those issues. Because he did not file a notice of appeal within 30 days of that order, John's appeal did not divest the district court of jurisdiction over the modification proceedings.

Under § 25-1902, Kathleen's motion for release of nonexempt funds is properly considered as a summary application in an action after judgment is rendered. See *Heathman v. Kenney*, 263 Neb. 966, 644 N.W.2d 558 (2002) (order made on summary application in action after judgment is ruling on postjudgment motion in action). Further, we conclude that the May 11, 2012, order releasing the funds to Kathleen's attorney affected one of John's substantial rights and was a final, appealable order. Thus, John was required to separately appeal from that order.

However, John filed a motion on May 17, 2012, to vacate that order. We conclude this motion was a valid motion to alter or amend judgment, which tolled the time to perfect an appeal. See Neb. Rev. Stat. § 25-1329 (Reissue 2008) (motion seeking substantive alteration of judgment must be filed no later than 10 days after entry of judgment). When the district court entered its May 29 order overruling this motion, the order

releasing the funds became final and appealable. John has not perfected an appeal from that order.

Because John has not separately appealed from the order releasing nonexempt funds, we do not have jurisdiction to consider his arguments related to that order.

## V. CONCLUSION

For the reasons stated herein, we do not have jurisdiction of John's appeal as it relates to the modification order, due to his failure to timely appeal from that order. We also find that we are without jurisdiction to review John's arguments as they relate to the garnishment proceedings. Finally, we affirm the district court's decisions regarding John's contempt application.

AFFIRMED IN PART, AND IN PART DISMISSED.

———————————

CRAIG LYNN BARTHEL ET AL., COPERSONAL REPRESENTATIVES OF
THE ESTATE OF DOROTHY BARTHEL, DECEASED, APPELLANTS,
v. CHARLES A. LIERMANN, INDIVIDUALLY AND AS
SUCCESSOR TRUSTEE OF THE GENE W. LIERMANN
LIVING REVOCABLE TRUST, AND ERNA E. LIERMANN,
TRUSTEE OF THE ERNA E. LIERMANN LIVING
REVOCABLE TRUST, APPELLEES.

___ N.W.2d ___

Filed January 28, 2014.    No. A-12-745.

1. **Statutes.** The meaning and interpretation of a statute are questions of law.
2. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
3. **Statutes: Appeal and Error.** When an appellate court confronts a statute, it gives statutory language its plain and ordinary meaning and will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
4. **Statutes: Judicial Construction: Legislature: Presumptions: Intent.** When judicial interpretation of a statute has not evoked a legislative amendment, it is presumed that the Legislature has acquiesced in the court's interpretation.
5. **Real Estate: Waters: Time.** Neb. Rev. Stat. § 31-224 (Reissue 2008) imposes upon a landowner the duty to clean a drainage ditch once a year, between March 1 and April 15.